UNITED STATES

v.

**Philippe E. SILVIS, 192 56 8345 Aviation Electrician's Mate Third Class (E–4), U.S. Navy.**

**NMCM 89 0899.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 17 Nov. 1988.

Decided 31 Aug. 1990.

---

**708**

LT Nicholas Fitzgerald, JAGC, USNR, Appellate Defense Counsel.

LT Rosalyn D. Calbert, JAGC, USNR, Appellate Government Counsel.

Before BYRNE, FREYER and STRICKLAND, JJ.

FREYER, Judge:

The appellant, his barracks roommate AMS3 Christopher Edward O'Donnell, and PRAA Christine Michelle Creese were all members of Patrol Squadron 31, based at Naval Air Station, Moffett Field, in California. After spending the evening in loose association with several other members of the squadron at a local drinking establishment popular with Moffett Field personnel, the appellant and AMS3 O'Donnell returned to their barracks room with PRAA Creese. The appellant drove PRAA Creese's car, as she was apparently in no condition to do so. Back at the room, they continued to drink and socialize, the evidence being in dispute as to whether the appellant or AMS3 O'Donnell received the bulk of PRAA Creese's attentions. When it came time to go to bed, however, PRAA Creese chose AMS3 O'Donnell.

A short time later, at dawn, after a night of much alcohol and very little sleep, PRAA Creese awoke to find herself engaged in sexual intercourse. Initially, according to her testimony, she supposed that it was a reprise of the intercourse had earlier with AMS3 O'Donnell, but, upon opening her eyes to see AMS3 O'Donnell sitting in a chair observing the event, she realized that she was having intercourse with the appellant, whereupon she promptly extricated herself and departed for her off-base residence in her own car in a state of considerable agitation.

On her way home, her car stopped on the freeway, and she had a brief encounter concerning it with a police officer, to whom she made no complaint of a sexual assault. Arriving at her residence about an hour after having left the barracks, she encountered her own roommate, also a female member of Patrol Squadron 31, who was about to leave for work. PRAA Creese showed signs of being greatly upset but did not relate any events to her roommate, who was in a hurry to leave. After arriving at work, however, the roommate telephoned to inquire about PRAA Creese's welfare, at which time PRAA Creese informed her that she had taken a large number of sleeping pills. She was even-

tually attended to and hospitalized, and she suffered no known permanent injury.

As a result of the notoriety which the Creese affair received within Patrol Squadron 31, allegations surfaced that the appellant had raped another member of the squadron almost seven months earlier and had attempted to rape yet another member of the squadron almost three months before that. No official complaint had been made concerning either alleged assault, but all three incidents were then investigated, and one charge of attempted rape and a second charge with two specifications of rape were ultimately referred for trial. The members found the appellant not guilty of the two earlier offenses but guilty of raping PRAA Creese. His sentence, which reaches us unchanged, is reduction to pay grade E–1, forfeiture of all pay and allowances, confinement for three years, and a bad-conduct discharge.

█ In his first and fourth assignments of error, respectively, the appellant asserts that the evidence on the one charge of which he was convicted leaves a reasonable doubt as to his guilt, and that the military judge overstepped his bounds in examining the appellant during his testimony in the defense case-in-chief. We find no merit in either of these assignments of error, and we are convinced beyond a reasonable doubt that the appellant is guilty of having raped PRAA Creese, as charged.

In his second assignment of error, the appellant asserts that the military judge erred in denying his motion to sever the charges against him and claims that he would not have been convicted of raping PRAA Creese had that charge been tried in isolation. For the reasons stated below, we do not agree with his contentions.

█ Unlike civilian practice, military practice favors the joinder of all known charges, save in a case where such joinder threatens manifest injustice. *See* Rules for Courts–Martial (R.C.M.) 307(c)(4), 601(e)(2), and 906(b)(10); *see also United States v. Haye,* 29 M.J. 213 (C.M.A.1989). Where, as here, a motion for severance has been denied, appellate courts have the benefit of hindsight in assessing whether or not the

joinder produced an unjust result. One factor which carries great weight is the findings, themselves, which may reveal whether or not an impermissible crossover caused the presence of a charge on which the evidence was strong to result in conviction of charges on which the evidence was relatively weak. *See United States v. Hogan,* 20 M.J. 71 (C.M.A.1985); *see also Haye.* Another such factor is whether or not evidence of the other offenses, although not charged, would have been admissible in a trial of the charged offense. *See United States v. Ferguson,* 28 M.J. 104 (C.M.A.1989). A third such factor is whether or not the military judge provided the members with a proper limiting instruction. *See Hogan.*

█ In this case, the members found the appellant not guilty of the two charges as to which the evidence was open to reasonable doubt. Their discrimination, as reflected in the findings, obviously removed any danger that the presence of the Creese charge led to conviction of any others. As regards the reverse possibility, we think that the material differences in proof between the other offenses, which were allegedly perpetrated by force, and the Creese offense, which was allegedly perpetrated by trick, minimized any likelihood of prejudice in that regard. Moreover, although evidence of the other offenses would most likely have been inadmissible under Military Rule of Evidence (Mil.R.Evid.) 404(b) in the prosecution's case-in-chief on the Creese charge alone, once the appellant's evidence raised the affirmative defense of honest and reasonable mistake of fact, we think that evidence of the other offenses became admissible to rebut that affirmative defense, inasmuch as the emphasis with respect to it shifted from her state of mind to his. *See United States v. Reynolds,* 29 M.J. 105 (C.M.A.1989). The military judge did not give any kind of limiting instruction, but he was not requested by either party to do so, nor was any exception taken to his instructions. The absence of such a defense request may well have been the result of a tactical decision to avoid planting the suggestion in the minds

of the members of a cumulative force of the several charges. The principal distinction, as we see it, between the Creese charge and the other two consists in the presence of fresh complaint and post-traumatic condition evidence regarding PRAA Creese and the total absence of any such evidence regarding the other two alleged victims. In our view, it was this evidence of fresh complaint and post-traumatic condition, together with discrepancies in the testimony of the appellant and his roommate AMS3 O'Donnell, both of whom took issue with portions of their own pretrial statements to the Naval Investigative Service, and not the presence of other charges, which led to the appellant's conviction on the Creese charge. We, therefore, find the second assignment of error to be without merit.

In his third assignment of error, the appellant contends that the military judge erred in denying his motion *in limine,* thus permitting the prosecution to present evidence that, shortly after the alleged rape, the victim took an overdose of sleeping pills in what allegedly was a suicide attempt or, as seems more probable, a suicide gesture. Citing *United States v. Carter,* 22 M.J. 771 (ACMR 1986), *affirmed,* 26 M.J. 428 (C.M.A.1988), appellate defense counsel asserts that it was error to admit such evidence otherwise than through the testimony of a qualified expert. Taking her cue from an analogy which the military judge included in the announcement of his ruling, the appellate government counsel argues that the suicide attempt or gesture was admissible as a nonverbal "fresh complaint." We do not agree with either position, but we find the evidence admissible in reliance upon authorities not cited by the parties.

■ Whether or not it would be classified as hearsay under Mil.R.Evid. 801(c), there is no doubt that a "fresh complaint" would necessarily constitute a "statement," as defined in Mil.R.Evid. 801(a). In order for nonverbal conduct, such as a suicide attempt or gesture, to be recognized as a "statement," it must be intended by the person performing it as an "assertion."

Mil.R.Evid. 801(a)(2). The burden of proving that the person performing the nonverbal conduct intended it as an "assertion" rests upon the party seeking to have it recognized as a "statement." *United States v. Butler,* 763 F.2d 11 (1st Cir.1985). In light of Airman Creese's testimony that she intended to kill herself (whether or not fully believed), we think that the government has failed to prove by a preponderance of the evidence that Airman Creese intended her suicide attempt or gesture as an "assertion." Consequently, we must reject the "fresh complaint" theory of admissibility offered by the Government.

■ The defense argument that this evidence must have been presented through the testimony of a qualified expert depends upon its falling within the definition of "rape trauma syndrome" evidence. As we perceive it, however, what constitutes "rape trauma syndrome" evidence is not the direct nor circumstantial evidence of the subsequent emotional or psychological condition of the victim, standing alone, but the combination of such evidence as a foundation for, and together with, *opinion* evidence that the victim's emotional or psychological condition is consistent with that characteristically exhibited by rape victims. Quite naturally, then, the courts have held that rape trauma is not a proper subject of lay opinion, and that, like any other expert opinion evidence, it must be given by experts possessing the requisite qualifications. We, therefore, consider *Carter* and cases like it to be applications of the general rule, vice examples of a special rule applicable to "rape trauma syndrome" evidence only.

In contrast to "rape trauma syndrome" *opinion* evidence, which was the subject of *Carter,* PRAA Creese's suicide attempt was simply nonverbal conduct on her part which, to the extent that it circumstantially evidenced what had happened to her and her nonconsenting state of mind at the time of the intercourse, tended to corroborate her testimony. Two cases may be cited to illustrate the point.

In *People v. Pullins,* 145 Mich.App. 414, 378 N.W.2d 502 (1985), the court reversed a

conviction, finding rape trauma syndrome evidence inadmissible under the test established in *Frye v. United States*, 54 U.S. App.D.C. 46, 293 F. 1013 (1923), but went on to provide the following guidance for the retrial:

> However, we do not mean to imply that evidence of emotional and psychological trauma suffered by a complaining witness in a rape case is inadmissible. Such evidence is relevant and jurors are fully competent to consider such evidence in determining whether a rape occurred, but it should not be presented with an aura of scientific reliability unless the *Frye* test is met.

An even stronger statement is found in *Casady v. State*, 721 P.2d 1342 (Okla.1986):

> L.P. [the victim] returned to her apartment and telephoned her cousin and his wife who immediately came to aid her. They later took her to the hospital for a medical examination. The cousin and his wife were each allowed to answer questions at trial regarding L.P.'s physical and emotional condition on the morning after the attack. Appellant claims that their testimony was irrelevant and prejudicial and that the trial court erred in not granting his motion for mistrial. He claims that the only probative value of this evidence was that of L.P.'s injuries, and that this was outweighed by the prejudicial value of the evidence. [Citation of Oklahoma version of Mil.R.Evid. 403 omitted.]
>
> The statements complained of include such thing as the victim was scared, shaking, and cold; that she was very upset and crying; that L.P. and her cousin's wife embraced. They each mentioned that her pastor and his wife were called. The cousin's wife responded when asked her relationship to L.P. that,

"Spiritually I'm a sister. Physically, I'm a cousin by marriage."

From our review of the record, we find that many of the statements were relevant. Evidence is relevant when it has a tendency to make the existence of a significant fact more probable or less probable. [Citations omitted.] L.P.'s emotional state was probative of the issue of consent. Her distraught state indicates she had not consented to the sexual relations, and in fact that the acts described actually occurred. Her physical appearance would certainly have a bearing on these issues as well. The testimony regarding telephoning L.P.'s pastor was offered in the course of these witnesses reciting the events of the morning.

In the instant case, Airman Creese was outnumbered, and the Government was in need of admissible evidence to corroborate her testimony. The defense was free to employ expert testimony, if such was available, in an effort to neutralize the suicide attempt or gesture as a basis for the inferences that the prosecution would be asking the trier of fact to draw therefrom. In light of the need for and probative value of this evidence, and the decision of the prosecution to forgo any "aura of scientific reliability," we find that the military judge did not err in submitting this evidence to the members.

The findings of guilty and the sentence, as approved on review below, are affirmed.

Chief Judge BYRNE and Judge STRICKLAND concur.