UNITED STATES, Appellee,

v.

Philippe E. SILVIS, Aviation Electrician's Mate Third Class, U.S. Navy, Appellant.

No. 65,653.

NMCM 89 0899.

U.S. Court of Military Appeals.

Argued May 9, 1991.

Decided Sept. 12, 1991.

For Appellant: *Lieutenant Ruth J. Medeiros, JAGC, USNR* (argued); *Lieutenant Randall L. Chambers, JAGC, USNR* (on brief).

For Appellee: *Major Rose Marie Favors, USMC* (argued); *Commander Thomas W. Osborne, JAGC, USN* and *Lieutenant Rosalyn D. Calbert, JAGC, USNR* (on brief).

*Opinion of the Court*

COX, Judge:

We are asked to decide whether a rape victim may testify about her attempt to commit suicide in the hours after the alleged rape took place.[1] The Court of Mili-

---

1. Contrary to his pleas, appellant was convicted of one specification of rape, in violation of Article 120, Uniform Code of Military Justice, 10 USC § 920. He was sentenced to 3 years' con-

tary Review set forth the relevant facts of this case succinctly, as follows:

The appellant, his barracks roommate AMS3 Christopher Edward O'Donnell, and ... [the victim] were all members of Patrol Squadron 31, based at Naval Air Station, Moffett Field, in California. After spending the evening in loose association with several other members of the squadron at a local drinking establishment popular with Moffett Field personnel, the appellant and AMS3 O'Donnell returned to their barracks room with ... [the victim]. The appellant drove ... [the victim's] car, as she was apparently in no condition to do so. Back at the room, they continued to drink and socialize, the evidence being in dispute as to whether the appellant or AMS3 O'Donnell received the bulk of ... [the victim's] attentions. When it came time to go to bed, however, ... [the victim] chose AMS3 O'Donnell.

A short time later, at dawn, after a night of much alcohol and very little sleep, ... [the victim] awoke to find herself engaged in sexual intercourse. Initially, according to her testimony, she supposed that it was a reprise of the intercourse had earlier with AMS3 O'Donnell, but, upon opening her eyes to see AMS3 O'Donnell sitting in a chair observing the event, she realized that she was having intercourse with the appellant, whereupon she promptly extricated herself and departed for her off-base residence in her own car in a state of considerable agitation.

On her way home, her car stopped on the freeway, and she had a brief encounter concerning it with a police officer, to whom she made no complaint of a sexual assault. Arriving at her residence about an hour after having left the barracks, she encountered her own roommate, also a female member of Patrol Squadron 31, who was about to leave for work....

[The victim] showed signs of being greatly upset but did not relate any events to her roommate, who was in a hurry to leave. After arriving at work, however, the roommate telephoned to inquire about ... [the victim's] welfare, at which time ... [the victim] informed her that she had taken a large number of sleeping pills. She was eventually attended to and hospitalized, and she suffered no known permanent injury.

31 MJ 707, 708–09 (1990).

At an Article 39(a)[2] session prior to trial on the merits, defense counsel filed a motion *in limine* to suppress any reference to the victim's suicide attempt. The military judge denied the motion and ruled in part:

It would seem to me that this testimony does have probative value. It does bear on an issue which is of consequence to the determination of the action and it is relevant. The question remains, of course, whether or not it should be otherwise excluded because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the members. It's my conclusion that it would not. It seems to me the members are able to take on board this testimony the same as any other testimony and give it what weight they in their determination think it deserves. And there isn't anything which is peculiar to this evidence that would cause them to depart from their dispassionate role in these proceedings. It does not appear to be unfairly prejudicial. It would not confuse the issues and it would not mislead the members. What weight they give such testimony is, of course, for the members to determine. They will have to determine whether or not these acts, in fact, occurred; that is the acts occurring or cited in the defense's motion. And they are free to associate whatever interpretation to

finement, total forfeitures, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the adjudged sentence, and the Court of Military Review affirmed the findings and sentence. 31 MJ 707 (1990). Appellant petitioned this Court, and we granted further review of the issue stated in the text.

2. UCMJ, 10 USC § 839(a).

those acts they deem appropriate. They might infer that the complaining witness was recently traumatized by the events she may maintain gave rise to these actions. Contrarily, they might find she was simply posturing and acting as, perhaps, the defense might suggest, out of shame as opposed to out of any sense of feeling that she was raped.

So, in other words, the ultimate inferences to be drawn from this evidence will, of course, be for the members to determine. And there are appropriate inferences that may be drawn consistent with either theory in the case; that is, either the prosecution's theory or possibly a theory consistent with a theory of innocence.

So the motion in limine ... is denied.

The victim's testimony about her suicide attempt was brought out during direct examination by trial counsel and consisted of the following:

Q. What did you do after Airman Mueller left?

A. I took a bunch of pills.

Q. Where did you find these pills?

A. In the cupboard.

Q. Whose pills were they?

A. Airman Mueller's.

Q. Airman ..., why did you take these pills?

A. Because I didn't want to live.

Q. Why was that?

A. Because of what he had done to me.

■ At trial, at the Court of Military Review, and now before this Court, appellant argues that the victim's testimony regarding the suicide attempt was irrelevant and highly prejudicial. Mil.R.Evid. 401, 402, and 403, Manual for Courts–Martial, United States, 1984. The thrust of appellant's position is that the inflammatory comment of attempting suicide without an accompanying expert opinion to explain such action renders the testimony highly prejudicial and inadmissible. We disagree.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Mil.R.Evid. 401. Clearly, evidence of the victim's actions in the hours following the rape was relevant and suggested evidentiary inferences both favorable and unfavorable to the defense.

Other actions and inactions taken by the victim before and after the rape were admitted; likewise, this suicide gesture or attempt is admissible. Defense counsel specifically questioned the victim about her encounter with a highway patrol officer; he also asked about her encounter with her roommate upon arriving at home. Defense counsel's line of inquiry unquestionably sought to highlight the fact that the victim did not inform either the officer or her roommate of the rape. The factfinder must be presented with the entire picture. Under the circumstances of this case, her testimony was part of the chain of events following the alleged assault and, thus, admissible to prove her state of mind. It likewise was admissible to rebut the defense cross-examination regarding those events following the assault which were favorable to the defense.

■ Appellant also contends that the testimony was not admissible without an expert opinion to lay a foundation for the relevance of the testimony. We disagree. A witness is competent to relate what she did immediately following an assault. An expert opinion is not necessary to explain to lay persons the import of testimony. Indeed, nothing precluded appellant from calling an expert witness if he thought that the victim's testimony conveyed an unfair or unwarranted inference.

■ Finally, the last hurdle for this evidence to overcome is a test for prejudice measured against the probative value of the evidence. It is our conclusion that such testimony is not so prejudicial as to outweigh its probative value under Mil.R.Evid. 403. The military judge enjoys broad discretion in making such a determination. *United States v. Redmond*, 21 MJ 319 (CMA), *cert. denied*, 476 U.S. 1105, 106

S.Ct. 1950, 90 L.Ed.2d 359 (1986). In this case we find no abuse of that discretion. The evidence was offered to provide a complete picture of the victim's actions. Moreover, the testimony was very narrowly limited; she took the pills because of the way she felt about what had happened to her.

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Chief Judge SULLIVAN concurs.

EVERETT, Senior Judge (dissenting):

The victim's suicide attempt or gesture several hours after the alleged rape was relevant if it can be equated to a statement by the victim that the attempt was motivated by the rape. However, according to Mil.R.Evid. 801(a), Manual for Courts-Martial, United States, 1984, "nonverbal conduct of a person" is a "statement" only "if it is intended by the person as a[n] assertion." Thus, if the victim had left a suicide note which assigned this motive for her attempt, the nonverbal conduct would probably qualify as a "statement." In that event, the nonverbal conduct, if described by a witness other than the victim herself, would not be considered hearsay if the testimony were offered under the circumstances specified by Mil.R.Evid. 801(d)(1).

In rejecting a government contention that the victim's suicide attempt could be considered a "fresh complaint"—which, the court below failed to observe, is a concept not recognized in the Military Rules of Evidence as it had been previously in the 1951 and 1969 Manuals for Courts-Martial, see *United States v. Sandoval*, 18 MJ 55, 61 (CMA 1984)—the court determined that the Government had "failed to prove by a preponderance of the evidence that" the victim "intended her suicide attempt or gesture as an 'assertion.'" 31 MJ 707, 710 (1990). However, the court below reasoned—as does the majority opinion—that the "suicide attempt" or gesture "was simply nonverbal conduct on her part which, to the extent that it circumstantially evidenced what had happened to her and her nonconsenting state of mind at the time of the intercourse, tended to corroborate her testimony." If the attempt or gesture was not intended by the victim as an assertion that she had been raped, I am not sure why it constituted circumstantial evidence of "her nonconsenting state of mind." Apparently the logic is that the suicide attempt or gesture tended to prove that the victim was despondent, and this despondency was circumstantial evidence that it had been caused by the rape.

I agree that state of mind of an alleged victim at or near the time of a rape can be important circumstantial evidence in determining whether a rape occurred. Indeed, the possibility that the factfinder might otherwise misconstrue the significance of the alleged victim's state of mind is one of the reasons for allowing expert testimony as to rape trauma syndrome.

However, in this case, I am unpersuaded that the victim's nonverbal conduct—the suicide attempt or gesture—constituted admissible circumstantial evidence that the victim had not consented to intercourse with appellant, even if that conduct established that she was despondent several hours after having intercourse with Silvis. Indeed, one can only speculate whether she was despondent because the sexual intercourse was nonconsensual or because she had given consent after drinking too much and regretted her decision. Thus, to whatever extent the suicide attempt or gesture is probative of rape, its probative value is insufficient to overcome the prejudice to appellant that resulted from allowing the court-martial to speculate why the alleged victim had tried to kill herself. *See* Mil.R. Evid. 403.