UNITED STATES, Appellee,

v.

Rodney LAKE, Sergeant, U.S.
Army, Appellant.

No. 67,318.
CM 8902544.

U.S. Court of Military Appeals.

Argued Oct. 6, 1992.
Decided March 11, 1993.

For Appellant: *Captain Robin N. Swope* (argued); *Colonel Robert B. Kirby* (on brief); *Colonel Malcolm H. Squires, Jr., Lieutenant Colonel James H. Weise, Captain Robert Lane Carey.*

For Appellee: *Captain Glenn L. Kirschner* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel Daniel J. Dell'Orto, Captain Timothy W. Lucas* (on brief); *Lieutenant Colonel Joseph A. Russelburg.*

*Opinion of the Court*

SULLIVAN, Chief Judge:

On August 15 and 16, 1989, appellant was tried by a general court-martial composed of officer members at Fort Belvoir, Virginia. Contrary to his pleas, he was convicted of conspiracy to distribute crack cocaine and wrongful possession of crack cocaine with intent to distribute, in violation of Articles 81 and 112a, Uniform Code of Military Justice, 10 USC §§ 881 and 912a, respectively. The court-martial sentenced appellant to a dishonorable discharge, confinement for 25 years, total forfeitures, and reduction to Private E1. On March 19, 1990, the convening authority reduced the term of confinement to 5 years, but otherwise approved the sentence as adjudged. The Court of Military Review affirmed the findings and sentence in an unpublished opinion dated July 8, 1991.

On February 26, 1992, this Court granted review on the following two issues:

I

WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY ADMITTING TESTIMONY THAT APPELLANT HAD COMMITTED UNCHARGED ACTS OF POSSESSING, DISTRIBUTING, AND USING COCAINE MONTHS BEFORE THE CHARGED OFFENSES.

II

WHETHER APPELLANT WAS DENIED A FAIR TRIAL WHEN TWO PANEL MEMBERS WHO SAT ON APPELLANT'S CASE HAD KNOWLEDGE OR INFORMATION WHICH THEY FAILED TO DISCLOSE.

We hold that no error occurred in admission of the challenged uncharged-misconduct evidence in this case (*see generally United States v. Mukes,* 18 MJ 358 (CMA 1984)) and that appellant was not otherwise denied a fair trial (*see United States v. Wilson,* 21 MJ 193, 197 (CMA 1986)).

Appellant's guilt of the above offenses was largely based on the testimony of a single government witness, Private James L. Tucker, a registered source for the Army's Criminal Investigation Command (CID). Tucker testified during the Government's case-in-chief that he and appellant conspired to distribute cocaine in February 1989.[1] Tucker stated that he was approached by another soldier on February 8 or 9 who asked him if he was interested in selling cocaine. Later, two other men offered to "front" him 46 grams of cocaine for him to sell. When Tucker informed the men that this was too large a quantity, they left him with only 23 grams. He was to sell the drugs on his own and give his suppliers $1700.00 as their share of the proceeds.

Tucker, who was himself addicted to cocaine, cooked the cocaine into "rock" or "crack" form and smoked some of it. At some point, Tucker testified, he met appel-

---

1. These offenses were not within the ambit of Private Tucker's agreement with the CID as a registered source, and he was prosecuted for his part in these crimes. He pleaded guilty pursu-

ant to a pretrial agreement, and his case is now final. *United States v. Tucker,* CM 8901810, *aff'd* without opinion, *pet. denied,* 30 MJ 120 (CMA 1990).

lant in the barracks, and the pair returned to Tucker's room where they smoked some more of the crack cocaine. Over the next three days, appellant and Tucker managed to use most of the drug. Tucker and appellant, realizing that they needed to sell enough of the drug to satisfy the dealers' profit expectations, processed about $500.00 worth of the cocaine into crack. Tucker then gave it to appellant to sell. Apparently worried that appellant would use the drug, Tucker made it clear that appellant was to return with the money or any unsold cocaine.

After appellant left, the suppliers again visited Tucker. He advised them that appellant was out selling the drug. However, when appellant finally returned later that evening, he told Tucker that he had "messed up," meaning that he had used the drug rather than selling it. The two men argued but then smoked even more of the dwindling drug supply.

According to Tucker, they then discussed ways to recover the lost profits owed Tucker's suppliers. Appellant suggested that they go to Washington, D.C., buy more drugs, and sell them for a profit, which they could then give to Tucker's suppliers. Leaving Fort Belvoir, Virginia, in appellant's car, the two men headed for Washington, D.C., via Route 1. Along the way, they stopped at an apartment complex in Virginia, where appellant sold a quantity of cocaine for $50.00. After they arrived in the District of Columbia, appellant went to an apartment building and returned with two large rocks of cocaine. They returned to Fort Belvoir, where the two of them "cut" the cocaine into smaller portions. Then they returned to Route 1, where they sold some cocaine and continued to smoke some of the drug. They made six or seven similar trips into Washington, D.C., ending on February 12, 1989. On February 14, 1989, Private Tucker, fearful for his life,

turned himself in to CID and confessed to his crimes and implicated appellant.

Appellant took the stand in his own behalf and denied Tucker's story completely. He denied receiving any cocaine from Tucker on February 8–9, 1989. He denied seeing Private Tucker on February 9. He denied ever using cocaine in Tucker's presence or ever being around Tucker when Tucker used cocaine. He also denied seeing Cliff Styles, a second witness against him, on February 8 to 19, 1989. He also denied knowing at all Tyrone Noble, a third government witness called during the Government's case-in-rebuttal.

During the Government's case-in-rebuttal, trial counsel introduced the uncharged-misconduct evidence at issue on this appeal through the testimony of Private Tucker, Cliff Styles, and Tyrone Noble. These witnesses testified that appellant previously had made at least 10 similar trips into Washington, D.C., to buy cocaine for his own use or resale in the D.C. suburbs of Virginia. Trial counsel offered this evidence for the following reasons: to establish that there was a common plan or scheme; that appellant had a deliberate and specific intent to join the conspiracy charged; and that appellant had a motive to join the conspiracy which was to make money and to obtain drugs for his use.

Trial defense counsel disagreed. He argued generally that the previous incidents of uncharged misconduct were separate transactions not related to the incident on February 9, 1989, and therefore not relevant to the charged offense of conspiracy. Also, he argued that the evidence would "merely be showing the propensity to do" the act, an "impermissible" purpose under 404(b).

The military judge ruled on each argument individually and before the testimony was given, instructed[2] the members con-

---

**2.** The military judge further instructed the members just before they retired to make findings:

> Evidence has been introduced that the defendant made several trips back and forth from Virginia to D.C. and was involved in

picking up crack cocaine and returning and either selling it or using it. You may consider that for the limited purpose of its tendency to show a plan or design of the accused to enter an agreement to buy and sell cocaine by picking it up in D.C. and returning to Virginia and

cerning the proper use of this testimony as follows:

Members, you're about to hear some evidence offered by the prosecution which involves purported acts of misconduct by the accused on other dates and at other time[s]. This is a—You must limit your use of this in your deliberations. The Government is going to offer three witnesses that are going to talk about— that will testify to their trips that they made with the accused to D.C. and [b]ack to Virginia at different times and on the return to Virginia, there is alleged a sale or resale of the drugs or use and resale and use. They are going to testify about that, which is obviously misconduct. *It may be considered by you for the limited purposes of proving a plan or design by the accused as it may relate to conspiracy;* that there is a pattern—what the prosecution is offering now, to buy in D.C. and sell in Virginia. *Also, you may consider it to prove that the accused had a deliberate, knowing, and specific intent to join in the conspiracy with Tucker to distribute cocaine. You may also consider this evidence to show motive that the accused had of the conspiracy,* and that was to make money, to obtain it, to obtain it for use.

(Emphasis added.)

----

I

■ The first issue to be decided on this appeal is admissibility of the testimony of Private Tucker, Cliff Styles, and Tyrone Noble regarding appellant's prior drug activities. *See* Mil.R.Evid. 404(b) and 403, *Manual* for Courts–Martial, United States,

1984. The testimony of these witnesses was essentially that appellant had engaged in at least ten other conspiratorial drug sales and uses within the year preceding the charged offenses. Trial counsel argued, *inter alia,* that this uncharged misconduct showed appellant's specific intent, plan or scheme, and motive to join the charged conspiracy to distribute drugs. The military judge admitted the evidence for these reasons.

We first must decide whether the uncharged-misconduct evidence in this case served a relevant purpose at appellant's trial other than showing appellant's guilt by reason of his bad character. Mil. R.Evid. 404(b).[3] *See United States v. Reynolds,* 29 MJ 105, 109 (CMA 1989) (fact of consequence). Since appellant was charged with conspiracy between February 9 and 19, 1989, the prosecution was required to show that he then agreed, expressly or impliedly, with his fellow conspirators to commit a crime. *See generally United States v. Matias,* 25 MJ 356, 362 (CMA 1987), *cert. denied,* 485 U.S. 968, 108 S.Ct. 1242, 99 L.Ed.2d 441 (1988); *United States v. French,* 965 F.2d 67, 73 (6th Cir. 1992). *See* para. 5b(1), Part IV, Manual, *supra.* Moreover, it was also required to show that appellant agreed to commit the particular crime alleged to be the object of the conspiracy charged in this case, *i.e.,* distribution of cocaine. Finally, we note that appellant broadly denied the government witnesses' testimony that an agreement to distribute cocaine existed in February of 1989.

The uncharged-misconduct evidence showed numerous incidents during the pre-

---

sell it, to prove that the accused deliberately, knowingly, and specifically intended to join the conspiracy or agreement, the specific intent to sell cocaine with Tucker in this case. You may consider it to prove the motive of the accused, in this case to make money through distribution and the motive to obtain it for use. You may not consider this evidence for any other purpose and you may not conclude from this evidence that the accused is a bad person or has criminal tendencies, and he therefore committed the offenses charged.

3. Mil.R.Evid. 404(b) states:

(b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

ceding year of the conspirators' needing money or drugs and their response of getting together to buy drugs in D.C. Such repeated unlawful concerts of action circumstantially suggest a tacit agreement or understanding between these persons with respect to unlawfully acquiring drugs. *Id.* Moreover, existence of such an agreement as late as December 1988 was some evidence that a similar agreement existed between the same conspirators including appellant in February of 1989. Accordingly, the uncharged-misconduct evidence tended to show that appellant knowingly joined the charged conspiracy of February 1989. *United States v. Washington,* 969 F.2d 1073, 1081 (D.C.Cir.1992).

The challenged evidence also tended to show that appellant specifically agreed to distribute the drugs in Virginia on the night of February 9, 1989. The testimony of the three witnesses was that, in the past, they regularly went on these trips into Washington, D.C., specifically intending to buy drugs. Furthermore, they stated that they would use these drugs themselves or they would sell them along the Route 1 corridor in Northern Virginia on their way back to Fort Belvoir. Therefore, a reasonable inference could be drawn from these past distributions that appellant also agreed to the distribution of at least part of the cocaine which he similarly acquired on February 9, 1989. *United States v. Mukes,* 18 MJ 358 (CMA 1984); *United States v. Moore,* 732 F.2d 983, 989 (D.C.Cir. 1984); *cf. United States v. Hernandez,* 975 F.2d 1035, 1039 (4th Cir.1992).

The challenged misconduct evidence also supported trial counsel's contention that appellant had an existing plan formulated to acquire drugs and money and that the charged offenses were products of this plan. *See generally United States v. Brannan,* 18 MJ 181, 183 (CMA 1984). All the uncharged incidents involved the same goals of procuring drugs and money; the same method of operation of car trips to D.C. for purchase of drugs and return to Virginia for their use and sale; and the same parties including appellant. Therefore, the conspiracy and the drug possession on February 9, 1989, for which appellant was charged could rationally be found to have occurred as natural products of such a plan. *United States v. Munoz,* 32 MJ 359, 363–64 (CMA), *cert. denied,* ——— U.S. at ———, 112 S.Ct. 437, 116 L.Ed.2d 456 (1991); *United States v. Gessa,* 971 F.2d 1257, 1261–62 (6th Cir.1992); *United States v. Norton,* 846 F.2d 521, 523–24 (8th Cir. 1988).

The testimony of Tucker, Styles, and Noble also evidenced appellant's motives on February 9–12, 1989, for joining the charged conspiracy and possessing drugs with an intent to distribute. Assuming Tucker and Styles were believed, each time in the past when they went with appellant into Washington, D.C., for drugs, they all had two purposes in mind—getting high and earning money. Other evidence in this case showed that appellant on February 9, 1989, owed money to other drug suppliers and wanted to continue using drugs. Thus, proof of the existence of such motives in appellant around the time of the charged offenses was some evidence that the charged conspiracy and possession occurred as an outlet for these desires. *See United States v. Hebert,* 35 MJ 266, 268 (CMA 1992); *United States v. Watkins,* 21 MJ 224, 227(CMA) (opinion of Cox, J.), *cert. denied,* 476 U.S. 1108, 106 S.Ct. 1956, 90 L.Ed.2d 364 (1986). *See generally United States v. Miller,* 974 F.2d 953, 960 (8th Cir.1992); *United States v. Templeman,* 965 F.2d 617, 619 (8th Cir.), *cert. denied,* ——— U.S. ———, 113 S.Ct. 482, 121 L.Ed.2d 387 (1992).

■ Additionally, we reject appellant's argument that the probative value of the evidence of previous drug transactions and use was far outweighed by its danger of unfair prejudice to him. *See* Mil.R.Evid. 403.[4] While the challenged testimony was

---

4. Mil.R.Evid. 403 states:
   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue de-

prejudicial to appellant's case, the above rule only precludes admission of evidence which is "unduly" prejudicial to the defense. *United States v. Owens*, 21 MJ 117, 124 (CMA 1985). Moreover, we will not disturb the military judge's determination on this question absent a clear abuse of discretion on his part. *United States v. Cuellar*, 27 MJ 50, 54 (CMA 1988), *cert. denied*, 493 U.S. 811, 110 S.Ct. 54, 107 L.Ed.2d 23 (1989); *see United States v. Mukes*, 18 MJ at 359 (CMA 1984).

In the present case, numerous incidents of uncharged drug misconduct were presented by the Government. However, this evidence was admitted for specific and limited purposes to shore weaknesses in the prosecution's case occasioned by appellant's broad testimonial denials. *United States v. Silvis*, 33 MJ 135, 137 (CMA 1991). These evidentiary purposes were not directly related to appellant's character but concerned other relevant circumstantial facts which showed his guilt of the charged offenses. *United States v. Owens, supra.* Moreover, the judge twice gave appropriate limiting instructions on the permissible uses of this evidence. *See United States v. Orsburn*, 31 MJ 182, 188 (CMA 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1074, 112 L.Ed.2d 1179 (1991). Accordingly, we find no prejudicial error occurred in this case. *See United States v. Jones*, 32 MJ 155 (CMA 1991). *See generally United States v. Washington*, 969 F.2d 1073 (D.C.Cir. 1992).

## II

■ The second granted issue asks "whether appellant was denied a fair trial" because two members of his court-martial "failed to disclose" certain information in response to the military judge's *voir dire*. *See generally Smith v. Phillips*, 455 U.S. 209, 215–18, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). First, appellant contends that this nondisclosure permitted those members to sit on his court-martial although a substantial doubt now exists as to their overall impartiality. *See* RCM 912(f)(1)(N), Manu-

al, *supra.* This doubt, he asserts, arises because such nondisclosure suggests these members may have deliberately disregarded the judge's *voir dire* inquiries and perhaps his other instructions as well. *See United States v. Rosser*, 6 MJ 267, 273 (CMA 1979). Second, he suggests that their prior knowledge about his case and one's prior connection with a government witness were also proper grounds for a challenge for cause, and, thus, it was unfair for such members to sit on his court-martial. *See* RCM 912(f)(1)(N). Finally, he argues that, even if the undisclosed information, as averred, would not automatically justify challenges for cause against the members, he was denied his right to further question them to discover the full extent of their potentially disqualifying knowledge or relationship. *See* RCM 912(d); Art. 41(a), UCMJ, 10 USC § 841(a).

We note that both Captains Stipe and Sears, the members in question, were subjected to extensive *voir dire* by the military judge on a number of matters including: whether they knew the accused; whether they felt they could give the accused a fair trial; whether they could apply the rules of law and of the court; and whether they could keep open minds despite the serious nature of the charges. In response to a question whether any member had previously received legal advice from either trial or defense counsel, Captain Sears disclosed that she was a company commander, and as such, she had received advice from both these counsel. Captain Sears also indicated that she would not give either counsel's word more weight. Captain Stipe did not give any responses that indicated concern as to any of the above questions. While defense counsel conducted individual *voir dire* of some panel members, he did not choose to individually question Captain Sears or Captain Stipe. Moreover, defense counsel did not challenge either member for cause or peremptorily at trial.

lay, waste of time, or needless presentation of cumulative evidence.

The original charge sheet[5] in this case also shows that Captain Stipe, during the time in question, was Secretary to the General Staff for the Commander at Fort Belvoir (SGS). In this capacity and on behalf of the summary court-martial authority, she received and signed for appellant's initial charge sheet and additional charges. *See* RCM 403(a). The allied papers show that Captain Sears was the Commander of Headquarters Company, United States Army, Fort Belvoir. As such, she was the company commander of Specialist Tillman, a government witness at the Article 32, UCMJ, 10 USC § 832, investigation and at trial, and appellant's girlfriend. Finally, according to a post-trial affidavit, Captain Sears also purportedly coordinated an interview between this member of her command and a Federal law enforcement agent about appellant's case. *But see United States v. Bacon*, 12 MJ 489 (CMA 1982).

Turning first to the matter of willful concealment or deliberate disregard of the judge's instructions, we find such a suggestion unsupported by this record. We have examined the particular questions asked by the judge and have found no particular inquiry concerning receipt of courts-martial charges against appellant or about official relationships with government witnesses. Admittedly, the judge generally asked these members:

> Does anyone have any prior knowledge, other than Major Gaskin, of the facts or events in this case?

[and]

> Is any member aware, to phrase it another way, of any matter which may raise a substantial question concerning your participation in this trial as a court member?

However, a failure to disclose the above-noted information in response to these more general questions can at best be termed inadvertent. Although we do not condone such reticence by these members, we simply cannot rationally consider it sub-

stantial evidence that they purposefully disregarded the judge's questions or disobeyed any other instruction given by the judge in this case. *See Neron v. Tierney*, 841 F.2d 1197, 1204 (1st Cir.1988). *Cf. United States v. Rosser*, 6 MJ at 269 n.3 (evidence admitted showing deliberate nondisclosure by member).

We next must turn to appellant's second claim that two disqualified members unfairly sat on his court-martial. *United States v. Schuller*, 5 USCMA 101, 105, 17 CMR 101, 105 (1954). Generally, at courts-martial, members are challenged for cause for the reasons stated in RCM 912(f)(1), which lists thirteen enumerated grounds and one "catch-all" provision for exclusion. The specifically enumerated grounds do not include the fact that a member has routinely signed for the charges against an accused or that a member has a command relationship to a government witness.

Appellant, thus, relies on the catch-all ground, RCM 912(f)(1)(N), which provides:

> (1) *Grounds.* A member shall be excused for cause whenever it appears that the member:
>
>       *     \*     \**
>
> (N) Should not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality.

Recognized example of grounds for challenge for cause under RCM 912(f)(1)(N) include: a close relationship to the accused, either counsel, or a witness; "a direct personal interest" in the outcome of the court-martial; participation in "a closely related case"; having "a decidedly friendly or hostile attitude toward" any party; or having "an inelastic opinion concerning" sentencing. *See* RCM 912(f)(1)(N), Discussion. This nonexhaustive list of reasons to exclude a member from a panel reflects the President's concern with avoiding even the perception of bias, predisposition, or partiality in courts-martial panels. However,

---

**5.** This record did not comply with RCM 1103(b)(2)(D)(i), Manual for Courts–Martial, United States, 1984, in that DD Form 490, OCT 84, Page 5 was used instead of the original charge sheet or a duplicate.

qualified "jurors need not ... be totally ignorant of the facts and issues involved" in the case before them. *See Murphy v. Florida,* 421 U.S 794, 800, 95 S.Ct. 2031, 2036–37, 44 L.Ed.2d 589 (1975); *United States v. Talbott,* 12 USCMA 446, 449, 31 CMR 32, 35 (1961).

■ The matters appellant particularly raises do not create "substantial doubt" about the impartiality or fairness of the legal proceedings against him within the meaning of this rule. Appellant asserts only that one of the challenged members had a routine official involvement with his case and that the other member had an official relationship with a government witness. Insubstantial participation in a case (*see United States v. Edwards,* 4 USCMA 299, 307, 15 CMR 299, 307 (1954); *cf. United States v. Miller,* 19 MJ 159, 163 (CMA 1985)); innocuous prior knowledge of the facts of a case (*cf. United States v. Wismann,* 19 USCMA 554, 42 CMR 156 (1970); *United States v. Talbott,* 12 USCMA at 449, 31 CMR at 35); or official acquaintance with government witnesses are not *per se* disqualifying. *Cf. United States v. Glenn,* 25 MJ 278, 280 (CMA 1987).

■ Finally, we must turn to appellant's third argument concerning the effective undermining of his right to challenge for cause. *See generally* Art. 41(a). Appellant has complained that it was the members' nondisclosure which forced him to raise his objections concerning them for the first time on appeal. He also asserts that their silence in the face of the military judge's questions prevented him from asking further questions which could have exposed the full scope of their ineligibility.

■ We note, however, that he did not individually question either member on any matter at his court-martial. Moreover, a claim of unfairness dissipates if defense counsel could have reasonably discovered the grounds for his untimely challenges and examined these members on them through *voir dire. United States v. Glaze,* 3 USCMA 168, 171, 11 CMR 168, 171 (1953); *see generally* RCM 912(f)(4); *see*

*also* RCM 912(b)(3). This is the situation in appellant's case.

Defense counsel had a copy of or access to a copy of the charge sheet against appellant and the convening order, both of which had Captain Stipe's name typewritten on them. Also, Captain Sears' organization was listed in the convening order, and she stated during panel *voir dire* that she was a company commander. These facts alone should have alerted defense counsel to the potential for prior knowledge or a relationship to witnesses in these proceedings, especially to those witnesses who were previously identified at the Article 32 hearing as members of her company. *See United States v. Glaze, supra; cf. United States v. Roberts,* 7 USCMA 322, 327, 22 CMR 112, 117 (1956); *United States v. Schuller,* 5 USCMA 101, 105, 17 CMR 101, 105 (1954). In these circumstances, appellant's failure to individually *voir dire* and challenge the members at his court-martial constitutes waiver of any post-trial complaint on his part that he was denied an opportunity to discover these matters. *United States v. Wilson,* 21 MJ 193, 197 (CMA 1986). *Cf. United States v. Glenn, supra.*

The decision of the United States Army Court of Military Review is affirmed.

Judges COX, CRAWFORD and GIERKE concur.

WISS, Judge (concurring in part and in the result):

I agree fully with Part II of the majority opinion. Additionally, I agree with that portion of Part I that implicitly concludes that the challenged evidence of uncharged misconduct was admissible to prove a common design or plan of which the charged transactions—sharing several distinctive similarities with the uncharged misconduct—merely were a part. *See United States v. Brooks,* 22 MJ 441, 444 (CMA 1986). *Cf. United States v. Rappaport,* 22 MJ 445, 447 (CMA 1986) (" '... collection of disparate acts of the ... [accused] having illicit sex and drug abuse in common' " showed "propensity, not plan").

In this light, I need not join the majority in concluding that the uncharged misconduct was admissible, as well, to show the fact of a conspiracy, knowledge of a conspiracy, intent to engage in a conspiracy, and motive for engaging in the conspiracy. Since appellant's defense substantially amounted to alibi, the challenged evidence does not seem particularly material. *See United States v. Brooks, supra.*

I am satisfied, however, that appellant was not prejudiced by any misstep in the military judge's limiting instructions that permitted the members to consider the evidence to show intent to join the conspiracy and motive for doing so, in addition to "proving a plan or design by the accused as it may relate to conspiracy." Accordingly, I join the majority in affirming the decision below.