UNITED STATES, Appellee

v.

Edward L. MODESTO, Colonel
U.S. Army, Appellant.

No. 94–1213.
CMR No. 9002861.

U.S. Court of Appeals for
the Armed Forces.

Argued May 16, 1995.

Decided Sept. 29, 1995.

For Appellant: *Michael J. Duncan* (argued); *Captain Blair Jacobs* (on brief).

For Appellee: *Major Lyle D. Jentzer* (argued); *Colonel John M. Smith* (on brief); *Lieutenant Colonel James L. Pohl.*

*Opinion of the Court*

WISS, Judge:

1. Appellant was convicted by a general court-martial composed of officer members at Fort Carson, Colorado. Contrary to his pleas, he was found guilty of conduct unbecoming an officer and a gentleman (8 specifications), in violation of Article 133, Uniform Code of Military Justice, 10 USC § 933. He was sentenced to dismissal, as well as confinement and forfeiture of $3,000.00 pay per month for 9 months. The convening authority approved the sentence, and the Court of Military Review * affirmed. 39 MJ 1055 (1994).

2. This Court granted review on the following issue:

WHETHER THE STAFF JUDGE ADVOCATE VIOLATED RCM 912(c) BY DIRECTING TRIAL COUNSEL TO CONCEAL FROM THE DEFENSE THAT A PANEL MEMBER, BRIGA-

DIER GENERAL [A], HAD DRESSED AS A WOMAN AT A PARTY ATTENDED BY THE ASSISTANT TRIAL COUNSEL.

We hold that trial counsel's failure to disclose to the defense the information in question did not violate RCM 912(c), Manual for Courts-Martial, United States, 1984, because the incident did not constitute grounds for a challenge for cause or otherwise preclude effective *voir dire.*

I

3. The present legal issue arises from an unusual combination of pretrial, trial, and post-trial developments in this case. In 1987, 3 years prior to appellant's trial, Brigadier General (BG) A, who later would become the president of appellant's court-martial, dressed as a woman at a Halloween party in Korea. Captain (CPT) Heaton, who later would become the assistant trial counsel at appellant's court-martial, was present at the party and possessed pictures of BG A in female attire. Three years later, this innocuous event would be the focus of the present appellate issue.

4. Appellant was a Dental Corps officer with 17 years of service. He initially was implicated as a suspect in a number of indecent-exposure incidents where the modus operandi was for the male perpetrator to dress as a woman. Based on identification of appellant and his car by victims and information from an informant, the Criminal Investigation Command (CID) began covert surveillance of appellant at a gay club that he frequented.

5. The investigation eventually revealed that appellant was a "marital partner" with another male with whom appellant shared his off-post house and that appellant performed as a female impersonator at the gay club. Photographs and other evidence seized in a lawful search of appellant's off-post home unequivocally proved his participation in conduct unbecoming an officer including sodomy, mutual masturbation, indecent touching of another male, cross-dressing in public, performing as a female impersonator in a night

* *See* 41 MJ 213, 229 n. * (1994).

club, and imitating fellatio with two other men.

6. At appellant's court-martial, defense counsel attempted to explore and to develop the members' knowledge of other situations where male officers dressed as females. The essence of this strategy was to illustrate that in some circumstances the military community tolerated men dressing as women. Then, based on acceptance of these incidents, defense counsel asserted that appellant's dressing in female attire was not *per se* conduct unbecoming an officer. The defense attempted to use two separate tactics to implement this strategy.

7. First, counsel sought to introduce evidence that another officer once had dressed as a woman. By motion, defense counsel asked the judge to order the testimony of retired Lieutenant Colonel (LTC) L, a prior deputy staff judge advocate, and to compel discovery of photographs of him dressed as a woman at a Ft. Carson Halloween party. The motion was precipitated by LTC L's testimony, at appellant's pretrial investigation under Article 32, UCMJ, 10 USC § 832, that he had dressed as a hula girl at a 1989 Halloween party. The military judge denied the request, ruling that LTC L's female costume attire had been at another time and circumstance and was irrelevant to the issue of whether appellant's cross-dressing was conduct unbecoming an officer.

8. Second, during *voir dire*, civilian defense counsel (CC) availed himself of the opportunity to explore the issue of cross-dressing with the members and asked the following questions:

CC: ... Have you ever seen any skits or—especially overseas where PERS-COM—we're more intergraded [sic] with women now, where men dressed as—perhaps cross-dressed in skits?

Colonel [F] (MEMBER): No, I haven't.

CC: All right. I have to ask the general, who's been around longer than the rest, were you—you were in service—let's see when the WACs came in and we went up to many women in the service, did you ever see any skits overseas where soldiers participated and cross-dressed? They

dressed as women either in play or skit or something?

GENERAL [A] (MEMBER): No, I don't believe so.

9. When two other members disclosed they had seen skits where males dressed as females, civilian counsel again asked if anybody else had observed this circumstance. BG A's only response was to express his disagreement with civilian counsel's characterization of this cross-dressing in skits as a "natural yearning because there's no women around."

10. Defense counsel, however, never asked BG A or any other member if he had dressed as a woman in a costume or skit. Therefore, defense counsel was unaware during trial that BG A had dressed in female attire at the Halloween party in Korea. Of course, defense counsel failed to challenge for cause BG A, and as well he failed to challenge either of the two members who had disclosed that they had seen skits where males dressed as females. The case proceeded uneventfully to its conclusion.

11. Only post-trial did appellant learn of BG A's costume at the Halloween party. Thereupon, appellate defense counsel moved for a new trial based on newly discovered evidence and developed the present issue. Affidavits were introduced at the Court of Military Review to address why the defense had been unable to discover evidence of this incident and how this issue initially had surfaced.

12. CPT Patterson (a defense counsel not involved in appellant's case) avers in his affidavit that, at an office picnic many months after the trial, CPT Meisner (trial counsel in appellant's case) told him and CPT Duncan (appellant's original defense counsel) of BG A's dressing in a woman's costume in Korea. CPT Patterson further asserted that he "believe[d]" that CPT Meisner said that Colonel (COL) Williams (the staff judge advocate (SJA)) "had advised" the assistant trial counsel "not to disclose th[e] information to the defense."

13. Affidavits of other officers provide additional information regarding an earlier dis-

cussion during trial. As CPT Meisner, CPT Heaton (assistant trial counsel), and COL Williams discussed the defense attempt to compel discovery of photographs of LTC L, CPT Heaton disclosed that he "had pictures of BG [A] dressed" in female attire "at a Halloween party in Korea." Contrary to CPT Patterson's belief that the SJA advised the assistant trial counsel not to disclose the information to the defense, both CPT Heaton and COL Williams avow that COL Williams never told him not to disclose information to the defense. Instead, CPT Heaton asserts that they "all laughed" and that COL Williams had said, "I wouldn't be passing those around." CPT Heaton asserts that he did not perceive the "comment as a directive . . . to withhold" the pictures "from the defense" and that he did not "perceive any significance" of BG A's costume to appellant's case. For his part, COL Williams admitted learning of BG A's dressing as a woman 2 years before this case was tried but specifically denied that he had "directed or suggested" that information be withheld from Modesto's defense. CPT Meisner himself stated that he had no "firsthand knowledge as to whether COL Williams" had told CPT Heaton "not to disclose" the information to the defense.

14. Notwithstanding the differing recollections and conjecture regarding why trial counsel failed to disclose to the defense the matter of BG A's Halloween attire, it is undisputed that there was no such disclosure. Accordingly, due to the belated revelation of this matter, the defense made a motion for new trial based on newly discovered evidence.

15. The Court of Military Review considered the affidavits of those involved and concluded that BG A's comments during *voir dire* did not constitute willful concealment or a lie concerning whether he had seen soldiers in a play or skit where they cross-dressed. In an order issued prior to the published opinion, the court denied appellant's motion for a new trial because appellant had failed to show how the fact that BG A's dressing as a woman at a Halloween party in Korea "probably" would have "produce[d] a substantially more favorable result for" appel-

lant. *See* RCM 1210(f)(2)(C). As the precise issue before this Court was not presented below, the Court of Military Review, in either its initial order or its published opinion, did not make any factual finding regarding whether anyone had told CPT Heaton not to disclose to the defense the information and did not address the present issue.

## II

16. Impartial court-members are a *sine qua non* for a fair court-martial. See *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982); *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954); *United States v. Mack*, 41 MJ 51 (CMA 1994); *United States v. Glenn*, 25 MJ 278 (CMA 1987); *United States v. Smart*, 21 MJ 15 (CMA 1985). In the military justice system "an accused is still entitled to have his guilt or innocence determined by a jury composed of individuals with a fair and open mind." *United States v. Deain*, 5 USCMA 44, 49, 17 CMR 44, 49 (1954).

17. There are a variety of procedural safeguards to insure that members are impartial. *Voir dire* provides an accused the opportunity to expose possible biases, both known and unknown, on the part of the members. *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). Litigants may exercise both causal and peremptory challenges to excuse members who are or appear to be partial. *See* RCM 912(f) and (g). In this connection, a military judge is required "to grant challenges for cause liberally." *United States v. White*, 36 MJ 284, 287 (CMA 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 918, 127 L.Ed.2d 212 (1994); *United States v. Smart, supra*. Both the SJA and the trial counsel have an affirmative duty to disclose any known ground for challenge for cause. *United States v. Glenn, supra*. Finally, this Court consistently has required member honesty in *voir dire* to permit a fair member-selection process. *United States v. Rosser*, 6 MJ 267, 273 (CMA 1979)(Court critical of member's "lack of candor" that

"falls far short of the full disclosure mandated by ... general principles of military law"); *United States v. Lake,* 36 MJ 317, 323 (CMA 1993)(Court explicitly rejects "reticence" by court members).

18. We granted review in this case to evaluate if one of these safeguards—the Government's affirmative duty to disclose any known ground for challenge for cause—was violated, thereby denying appellant a fair trial. Relatedly, we have considered whether BG A compromised his duty of honesty and candor during *voir dire.* We approach this task mindful of the Supreme Court's statement:

> The safeguards of juror impartiality, such as *voir dire* and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen....

*Smith v. Phillips,* 455 U.S. at 217, 102 S.Ct. at 946.

19. There can be no doubt as to trial counsel's duty to "state any ground for challenge for cause against" a member, as the President has expressly stated this command. RCM 912(c). Relying in part on this Rule, this Court in *United States v. Glenn, supra* at 280, found reversible error in the deputy, and later acting, SJA's failure to disclose that a member of his family was sitting on the accused's court martial. The linchpin of the Court's analysis in *Glenn* was that this error had precluded effective *voir dire* and had made it impossible for the judge or counsel to test the member's potential bias. The familial relationship of the SJA and the member was a ripe area for *voir dire.*

■ 20. We view trial counsel's failure to disclose to the defense and to the military judge that BG A had dressed in the costume of a woman at a Halloween party as a matter with much less potential for concern. This circumstance was not a *per se* bar to his sitting as a court member. *See* RCM 912(f). Additionally, appellant does not aver bias arising from BG A's and CPT Heaton's having attended the Halloween party. *Cf. United States v. Glenn, supra.* BG A's costume at a Halloween party was innocuous personal behavior similar to the cross-dressing in a King Neptune ceremony that this Court stated was not prejudicial to good order and discipline in *United States v. Guerrero,* 33 MJ 295, 298 (CMA 1991). BG A was not presenting himself as a woman but, rather, was in female attire at a function recognized as a costume party.

21. Further, it appears unlikely that the defense would have challenged BG A, since they failed to challenge COL A and COL M, both of whom indicated during *voir dire* that they had seen skits wherein male soldiers dressed as females. Finally, as the military judge correctly refused to adduce testimony from LTC L regarding his dressing at a Halloween party because that information was not relevant, it seems that BG A's costume is equally irrelevant.

22. In sum, the Halloween party was an incident at another time and place and in circumstances uniquely different from appellant's cross-dressing. We agree with the view of the military judge, expressed in connection with the motion regarding LTC L, that tolerating provocative costume dressing at a Halloween party does not imply that the Army accepts or tolerates the cross-dressing involved in these charges, which were under greatly different circumstances.

■ 23. We next scrutinize the *voir dire* to determine if BG A fulfilled his duty of honesty and candor in *voir dire.* The Supreme Court has stated a two-part standard for determining when juror responses during *voir dire* necessitate a new trial: A party first must demonstrate that a juror failed to answer honestly a material question on *voir dire* and then must show that a correct response would have provided a valid basis for a challenge for cause. *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). Although *McDonough Power* is a civil case, we

have applied this rule to courts-martial. *See United States v. Mack*, 41 MJ 51, 55 (CMA 1994).

24. The normal procedure is to remand the issue of juror nondisclosure during *voir dire* to develop a factual record or to resolve factual controversies. *Id.* This procedure is unnecessary here, as the record and affidavits clearly establish the circumstances of BG A's failure to disclose this matter at appellant's trial, and we are satisfied with the factual conclusions of the Court of Military Review. *Cf. United States v. Mack, supra* at 55. Moreover, it is interesting to note that, on appeal, appellant failed to request an evidentiary hearing on this issue. Apparently, appellant is satisfied to submit the case on its merits. As this issue was not presented to the military judge, we review this issue *de novo. See McDonough Power Equipment, Inc. v. Greenwood, supra.* ¶ 23.

25. We consider it most important that defense counsel has not demonstrated that BG A failed to answer honestly a material question on *voir dire.* Any speculation as to why BG A failed to disclose this matter may be answered simply by the fact that the defense never specifically asked him if he had ever dressed as a woman. In fact, the defense never asked any member that question. While the defense at trial inquired about each member's knowledge of *skits* involving men dressing like women, that is not the same question. Moreover, appellant does not assert that a fundamental purpose of his *voir dire* was to remove any and all panel members who had ever dressed in the costume of a woman.

26. We are reluctant, absent unusual circumstances that are not present here, to conclude that a member is not forthright when defense counsel fails to ask *voir dire* questions that reasonably would trigger a disclosure of the particular fact at issue. Moreover, the factual findings of the Court of Military Review that BG A's answers did not constitute a willful concealment or a lie are supported by the record. Defense counsel's failure to ask the key question results in appellant's failing to meet the first prong of the *McDonough Power* test (¶ 23)—appellant

has not demonstrated that a juror failed to answer honestly a material question on *voir dire.*

27. Although unnecessary, we turn to the second prong of the inquiry—that appellant must show that a correct response would provide a valid basis for a challenge for cause. RCM 912(f)(1)(N) states that "[a] member shall be excused for cause whenever it appears that the member ... [s]hould not sit ... in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." Examples of matters which may be grounds for challenge under subsection (N) include "a decidedly friendly or hostile attitude toward a party" or "an inelastic opinion concerning an appropriate sentence for the offenses charged." *See* RCM 912(f)(1), Discussion.

28. The fact that an accused might have challenged a member peremptorily "is not alone sufficient to reverse [a] conviction." *Williams v. United States*, 418 F.2d 372, 377 (10th Cir.1969). Thus, as BG A's dressing in the costume of a woman at the Halloween party was not a valid basis for a challenge for cause, appellant has failed to meet the second prong of the *McDonough Power* test. We, therefore, conclude that there was no compromise of the safeguard of member honesty and candor in *voir dire.*

29. We decline to decide any other discovery issues or to remand the case to resolve the factual dispute of whether the SJA ordered the prosecution not to disclose the pictures of BG A. The former issues are not before this Court, and the latter issue is moot as a result of our decision today. *Cf. United States v. Mack, supra.*

30. We do, however, suggest that a liberal disclosure to defense counsel, including the picture of BG A, may have obviated this issue on appeal. *See United States v. Glenn, supra.* In the area of discovery, military law has been preeminent, providing broader discovery than is "granted to most civilian defendants" and zealously guarding the right of an accused to prepare his case by open disclosure of the Government's evidence. *United States v. Hart*, 29 MJ 407, 410 (CMA

1990); *United States v. Enloe*, 15 USCMA 256, 35 CMR 228 (1965); *see, e.g., United States v. Simmons*, 38 MJ 376 (CMA 1993); *United States v. Eshalomi*, 23 MJ 12 (CMA 1986); Art. 46, UCMJ, 10 USC § 846; RCM 701(a)(1)(C).

31. Here, the defense had made a *specific request* for the Halloween pictures of the former deputy SJA. This request triggered CPT Heaton's memory of his possession of a similar picture of BG A. Failure to acknowledge the defense's concern and to reveal a similar picture of BG A needlessly created an appellate issue and jeopardized the conviction. *See generally Smith v. Phillips*, 455 U.S. at 212–14, 220–21, 102 S.Ct. at 943–44, 947–48 (error for the prosecution to fail to disclose that juror had submitted during trial an application for employment as a felony investigator with the prosecutor, but failure to disclose this was not prejudicial); *United States v. Simmons*, 38 MJ 376 (CMA 1993). However, as we have concluded that this nondisclosure related to a matter that was not a valid basis for a challenge for cause, did not preclude effective *voir dire*, and was not otherwise favorable to the defense, the non-disclosure was in no way prejudicial.

III

The decision of the United States Army Court of Military Review is affirmed.

Judges.COX, CRAWFORD, and GIERKE concur.

SULLIVAN, Chief Judge (concurring in part and in the result):

32. I disagree with the majority's conclusion that Brigadier General Allen's silence during *voir dire* was proper. He should have candidly disclosed the incident involving his wearing female attire at a costume party when civilian defense counsel asked him directly if he had ever seen male soldiers "dressed as women either in [a] play or skit or something." *See generally United States v. Lake*, 36 MJ 317 (CMA 1993); *United States v. Rosser*, 6 MJ 267, 273 (CMA 1979); *cf. United States v. Mack*, 41 MJ 51 (CMA 1994). Nonetheless, I join the majority's result because there is no evidence in the record that "a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equipment, Inc., v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984).