**UNITED STATES**

v.

**Joseph MILES, 421–15–2224, Aviation Storekeeper Airman (E–3), U.S. Navy.**

**NMCM 96 01941.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 5 June 1996.

Decided 9 Dec. 1997.

LT Estela I. Velez, JAGC, USNR, Appellate Defense Counsel.

Maj Clark R. Fleming, USMC, Appellate Government Counsel.

Before DOMBROSKI, Chief Judge, and SEFTON and OLIVER, Appellate Military Judges.

OLIVER, Judge:

A general court-martial composed of officer and enlisted members convicted the appellant of making a false official statement, forcible sodomy, providing liquor to a minor, indecent assault, and solicitation to commit sodomy, in violation of Articles 107, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 907, 925, and 934 (1994)[hereinafter UCMJ].[1] The members adjudged a sentence of confinement for 6 years, reduction to the lowest enlisted pay grade, and a dishonorable discharge. The convening authority approved the sentence. However, as a matter in clemency, the convening authority waived all automatic forfeitures for a period of 6 months after the appellant made appropriate arrangements for an allotment to be paid to his dependents.

We have examined the record of trial, the five assignments of error,[2] and the Government's response thereto. After careful consideration, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the sub-

1. The members acquitted the appellant of attempted rape, making a second false official statement, committing an indecent assault, and rape.

2. I. APPELLANT WAS DENIED A FAIR TRIAL WHEN ONE OF THE MEMBERS, AZ1 RONALD E. BROWNIE, FAILED TO DISCLOSE DURING *VOIR DIRE* THAT HE WAS BEING INVESTIGATED BY NCIS FOR ALLEGATIONS OF RAPE, THE SAME CHARGES APPELLANT WAS FACING, BEFORE AND DURING APPELLANT'S COURT–MARTIAL.

II. THE STAFF JUDGE ADVOCATE ERRED WHEN HE [sic] FAILED TO COMMENT ON ALLEGATIONS OF LEGAL ERROR RAISED IN THE R.C.M. 1105/1106 BY DEFENSE COUNSEL AS IS REQUIRED BY R.C.M. 1106(d)(4), AND INSTEAD JUST FORWARDED THE PETITION WITHOUT ANY SPECIFIC COMMENTS ON ITS CONTENTS.

III. THE MILITARY JUDGE ERRED IN FAILING TO FIND SPECIFICATIONS 2 AND 4 OF CHARGE III, INDECENT ASSAULT AND SOLICITATION OF SODOMY MULTIPLICIOUS FOR FINDINGS AND SENTENCING WITH ADDITIONAL CHARGE II, SODOMY, WHERE THE OFFENSES OCCURRED AT THE SAME

TIME ARISING OUT OF ONE CONTINUOUS ACT. (Citations omitted.)

IV. THE GOVERNMENT FAILED TO PROVE APPELLANT GUILTY OF SPECIFICATION 3 [sic] OF CHARGE III, SOLICITATION OF SODOMY, AND, ADDITIONAL CHARGE II, FORCIBLE SODOMY, WHERE: (1) THE TESTIMONY OF THE ALLEGED VICTIM, MARNIN BOSSY, WAS UNRELIABLE GIVEN HER PRIOR ALLEGATION OF RAPE WHEN IN FACT SHE HAD NOT BEEN RAPED; ... (2) APPELLANT DENIED HAVING COMMITTED THE OFFENSES; ... (3) APPELLANT HAD A REPUTATION FOR BEING TRUTHFUL AND HONEST. (References and footnote omitted.)

V. A SENTENCE WHICH INCLUDES A DISHONORABLE DISCHARGE AND SIX YEARS OF CONFINEMENT IS TOO SEVERE UNDER THE CIRCUMSTANCES OF THIS CASE WHERE APPELLANT: (1) HAD SEVEN YEARS OF HONORABLE SERVICE IN THE NAVY; (2) HAD NO PRIOR CONVICTIONS OR NON–JUDICIAL PUNISHMENTS; AND, (3) WAS ENTITLED TO SEVERAL AWARDS AND DECORATIONS INCLUDING THE SOUTHWEST ASIA SERVICE MEDAL (2 AWARDS), AND, THE SEA SERVICE DEPLOYMENT RIBBON (2 AWARDS). (Footnote omitted.)

stantial rights of the appellant was committed.

## Criminal Investigation of a Panel Member

The appellant first contends that he was denied a fair trial because one of the members failed to disclose during *voir dire* that NCIS was investigating him for an unrelated allegation of rape.

"Impartial court-members are a *sine qua non* for a fair court-martial." *United States v. Modesto,* 43 M.J. 315, 318 (1995) (citations omitted). "In the military justice system 'an accused is still entitled to have his guilt or innocence determined by a jury composed of individuals with a fair and open mind.'" *Id.* (citing *United States v. Deain,* 5 C.M.A. 44, 49, 17 C.M.R. 44, 49, 1954 WL 2582 (1954)). To ensure that an accused enjoys a fair and impartial panel of members, the military judge and counsel have the opportunity to examine the members in a process called *voir dire* to determine if there are any grounds for challenge. RULE FOR COURTS-MARTIAL 912(d), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.)[hereinafter R.C.M.]. *See id.,* Discussion.

Our higher court has consistently required that the members provide full and accurate disclosure of information they are asked to provide. *United States v. Lake,* 36 M.J. 317, 323 (C.M.A.1993); *United States v. Rosser,* 6 M.J. 267, 273 (C.M.A.1979). "The effectiveness of the *voir dire* depends upon each potential member's providing valid, relevant information so that both judge and counsel can evaluate the member's qualifications and suitability for court-martial service." *United States v. Mack,* 41 M.J. 51, 54 (C.M.A.1994). "Where a potential member is not forthcoming ... the process may well be burdened intolerably." *Id.*

■ The court in *Mack* adopted a two-part test which the United States Supreme Court had articulated to determine whether a new trial is necessary based on a member's failure to disclose information. The appellant must (1) demonstrate that a potential mem-

ber failed to answer honestly a material question on *voir dire;* and (2) further show that a correct response would have provided a valid basis for a challenge for cause. *Id.* at 55 (relying upon *McDonough Power Equipment, Inc., v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984)). After careful review, we conclude that the appellant has not met the first part of this test.

■ There were two *voir dire* questions which the appellant claims that the member in question, AZ1 Brownie, answered with less than complete candor: (1) "Have any of you had any direct dealings with NCIS that would affect your ability to evaluate those two agents' testimony in an unbiased manner. In other words, any overriding problems with NCIS that would interfere with your ability to evaluate the credibility of those two witnesses?"; and (2) "Are any of you aware of anything, whatsoever, whether I have touched on it or not, that you feel should be disclosed or that you feel would have any affect on your ability to sit as a fair impartial member in this case, or that might in any way improperly influence your deliberations in this case?" Record at 19, 23. In response to these questions, all of the potential members gave a "negative response." *Id.*[3]

Since the information in the post–trial documents indicate that the NCIS had attempted to interrogate AZ1 Brownie, he was obviously aware that he had had "direct dealings with NCIS." *See* Motion to Attach Document of 3 September 97 (enclosing NCIS Report of Investigation of 31 July 96). However, we conclude that he truthfully answered the first question "no" because his dealings with another agent had not adversely affected his ability to evaluate the testimony of the agents involved in the appellant's case in a fair and unbiased manner. Likewise, we conclude that AZ1 Brownie answered the second question truthfully; he believed that he could be fair and impartial. During preliminary instructions, the military judge had stated: "If you know of any mat-

---

3. The members questionaire contained no questions which touched on any matters relevant to an NCIS investigation. *See* Appellate Exhibit II.

ter that you believe might affect your impartiality to sit as a member in this case, you must disclose that matter when asked to do so." Record at 15. Thus, the test he was expected to apply was a subjective one.

Of course, it would have been better had AZ1 Brownie alerted the court-martial participants of the fact that he was under criminal investigation for rape. We are confident that, had he been asked to do so in either his members' questionnaire or during *voir dire*, he would have answered honestly. Because the questions of the military judge and counsel posed were qualified as they were, however, we believe he was answering them honestly. He was fully confident in his ability to evaluate the testimony of the NCIS agents and the other evidence adduced at trial fairly and impartially.[4]

■ Another crucial test in resolving cases such as this one is "whether a court member's failing to respond or giving an incorrect response prejudiced the rights of the defendant." *United States v. Taylor*, 44 M.J. 475, 477 (1996). Even if we were to assume *arguendo* that AZ1 Brownie gave a dishonest response to these two questions, we could not conclude that this prejudiced the appellant's right to "a fair trial by impartial court members." *Id.*

The appellant received the fair trial to which he was entitled. AZ1 Brownie gave every indication of being an alert, conscientious, and impartial member. Based on his questionnaire, he was well educated, having received a bachelor of science degree and a master's degree in Human Resources Management. During the court-martial, he remained alert and asked several probing, objective questions.[5]

Moreover, if either party was prejudiced by AZ1 Brownie's lack of full disclosure and inclusion on this panel, it would be the Government. AZ1 Brownie had been accused of rape and had been subjected to an NCIS investigation. This, no doubt, resulted in acute embarrassment and emotional anguish. Such a person would likely be more willing than the average servicemember to be sympathetic toward another person's claims of wrongful accusations of sexual assault. Indeed, the appellant may well have benefitted directly from AZ1 Brownie's participation on the panel. Although we certainly do not know anything about the dynamics of the deliberative process in this case, we note that the members acquitted the appellant on several charges, including attempted rape and rape.

In addition to his argument that he meets the two-part *Mack/McDonough* test, the appellant has another theory on which to base relief. Citing *United States v. Daulton*, 45 M.J. 212, 217 (1996), he suggests that AZ1 Brownie's "implied bias" cast substantial doubt on the system's appearance of fairness "through the eyes of the public." *See United States v. Minyard*, 46 M.J. 229, 231 (1997). However, because the trial defense counsel did not challenge AZ1 Brownie at trial, the holdings in *Daulton* and *Minyard* are not directly implicated here.

We have been unable to find any appellate authority for the proposition that an appellant is entitled to have his conviction set aside because one of the members of the court-martial was himself (or herself) under investigation on the sole basis that the public

4. Had we concluded that AZ1 Brownie had not answered all of the questions on his questionnaire or during *voir dire* honestly, however, the appellant would prevail on the second prong of the *Mack/McDonough* test. Given the low threshold judges must apply in granting causal challenges, *United States v. Glenn*, 25 M.J. 278, 279 (C.M.A.1987), the fact that AZ1 Brownie himself was under investigation for rape would have given the appellant (or the Government) "a valid basis for a challenge for cause." *McDonough*, 464 U.S. at 556, 104 S.Ct. at 850. *See* R.C.M. 912(f)(1)(N).

In such case a fact-finding hearing might be necessary to enable the appellant to inquire into

possible prejudice and to make the case for why he should receive a new trial. *See Mack*, 41 M.J. at 55.

5. These included the following: the distance between the appellant's and victim's houses (and a request for a map); why it was important that the housing area be one of "Federal jurisdiction"; of the Government's expert, the possibility of a false report of rape under the defense counsel's hypothetical; and whether an alleged rape victim is entitled to reopen a case which she has asked be closed. *See Appellate Exhibits X, XVI, XXIV, XXIX, XXXIX.*

might not consider such a conviction fair. In *Taylor*, 44 M.J. at 476–77, the president of the court-martial was convicted, 8 months after the trial, of various serious offenses and was sentenced to a dismissal and confinement for 7 years. As in the instant case, the fact of the investigation was not brought out at the appellant's trial. Quoting *United States v. Aguon*, 851 F.2d 1158, 1170 (9th Cir.1988), our superior court concluded that there was "no evidence of prejudice.... There is no showing that [Colonel L] failed to answer honestly a material question." *Taylor*, 44 M.J. at 477.

One key distinction between the situation in *Taylor* and *Aguon* and the situation presently before us, is that in this case we have evidence "that at the time he was empaneled [AZ1 Brownie] knew he was under investigation." *Taylor*, 44 M.J. at 477 (quoting *Aguon*, 851 F.2d at 1170). However, this difference relates primarily to whether he was answering the court's questions honestly (and we conclude that he was). This fact carries relatively little weight in a determination of whether the public would consider that the military justice system has treated the appellant unfairly. The far more important factor is the lack of any "evidence of [AZ1 Brownie's] actual prejudice against [appellant] or words or actions that would show he might be prejudiced." *Taylor*, 44 M.J. at 477. For the reasons discussed above, we are confident that there was no such prejudice.

The relief that the appellant is seeking is either for this court to order a new trial or to return the case to the convening authority for a fact–finding hearing under *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411, 1967 WL 4276 (1967). Whether analyzed under the principles in *Mack* or *Taylor*, we conclude that the appellant is not entitled to a new trial.

Moreover, while "appellate courts are a poor substitute for trial courts in developing a record or for resolving factual disputes," *Mack*, 41 M.J. at 55, we conclude that a fact-finding hearing in this case would serve no purpose. There is no need to develop a more complete record because there is no real factual dispute. We have no doubt that, if we ordered a *DuBay* hearing, AZ1 Brownie would continue to maintain, as he did at the

original hearing, that he was able to be fair and impartial throughout the trial.

Because we are confident that AZ1 Brownie answered the questions posed to him during *voir dire* honestly, that the appellant received a fair trial by impartial members, and that a *DuBay* hearing would serve no purpose, we conclude that the appellant is entitled to no relief.

## Failure of SJA to Respond to Allegations of Legal Error

■ In his second assignment of error, the appellant claims that in her recommendation the staff judge advocate failed to comment on the allegations of legal error which the appellant raised in his R.C.M. 1105/1106 submission. We disagree.

In an undated addendum, the SJA briefly addressed all three legal errors which the appellant's civilian defense counsel included in her petition of 16 September 1996. After summarizing each, she concluded, "I do not agree with the civilian defense counsel and do not believe any legal errors exist." Because such cursory treatment is all that R.C.M. 1106(d)(4) requires, the assignment of error is without merit.

### Multiplicious Findings

The appellant next contends that the military judge erred in failing to find the offense of indecent assault and solicitation of sodomy multiplicious for findings and sentencing with sodomy.

■ Our analysis of the elements of the offenses of which the appellant was found guilty indicates that they were not multiplicious under the test the Court of Appeals for the Armed Forces articulated in *United States v. Teters*, 37 M.J. 370, 376–77 (C.M.A. 1993). *See United States v. Morrison*, 41 M.J. 482, 483–84 (1995). Moreover, since they are not "facially duplicative," the appellant forfeited the issue on appeal because of his failure to raise a multiplicity-for-findings motion at trial. *United States v. Lloyd*, 46 M.J. 19, 20 (1997). *See* R.C.M. 905(e). Therefore, this assignment of error is without merit.

### Factual Insufficiency

Contending that the testimony of the victim in this case was unworthy of belief when

compared to his in-court denials, in a summary assignment of error the appellant contends that the evidence does not establish his guilt of solicitation of sodomy or forcible sodomy. We disagree.

■ Before we can affirm findings of guilt, Article 66(c), UCMJ, 10 U.S.C. § 866(c), requires that this court determine the legal and factual sufficiency of the evidence. The test for legal sufficiency is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Turner,* 25 M.J. 324, 324 (C.M.A.1987). There is no question as to the legal sufficiency of the evidence.

■ The test for factual sufficiency on appeal is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we ourselves are convinced of the accused's guilt beyond a reasonable doubt. *Turner,* 25 M.J. at 325. In ascertaining factual sufficiency, "the trial court determinations are worthy of due deference on review," since the members saw and heard the witnesses and were in the best position to judge their credibility. *United States v. Bright,* 20 M.J. 661, 664 (N.M.C.M.R.1985) (citations omitted).

The record reveals cloudy recollections, inarticulate testimony, and obvious efforts on the part of the appellant to deceive, both in his statements to NCIS and on the stand. However, we have no difficulty sifting through it all to find more than adequate proof to establish these two offenses.

■ Turning to the solicitation of sodomy, the appellant admitted the gravamen of the offense during cross-examination. The appellant testified that he asked the young woman, after she had just made it clear to him that she did not want to engage in sexual intercourse and while fondling his erect penis inside his shorts: "Okay, if not sex how about some head?" Record at 285–86. They both understood that, by this suggestion, the appellant meant that she engage him in fellatio; she refused. *Id.* at 286. We are not sure which element of solicitation of sodomy that the appellant argues this testimony, along with the other evidence, did not establish. But we are fully satisfied of the factual sufficiency of this offense.

■ Although he vacillated on several key points in his statements to NCIS and at trial, the appellant consistently denied having committed the offense of forcible sodomy. The members concluded that the victim, who testified that the appellant forced his penis into her mouth, was the far more credible witness. We agree. Even though this panel of members convicted the appellant after considering all the evidence, we would not affirm unless we ourselves were convinced of the appellant's guilt beyond a reasonable doubt. We are so convinced.

Therefore, this assignment of error is without merit.

### Inappropriately Severe Sentence

■ Finally, the appellant contends that his sentence, which includes a dishonorable discharge and confinement for 6 years, was inappropriately severe. We first note that the sentence adjudged was considerably less than the authorized maximum. Moreover, the members responded to the appellant's sentencing case. They specified forfeitures of "zero pay per month for a period of 6 months." Record at 452. This sentence, combined with the appellant's clemency petition, resulted in the convening authority waiving automatic forfeitures for a period of 6 months. Additional sentence relief at this level would constitute clemency, a power which falls within the province of the convening authority. *United States v. Healy,* 26 M.J. 394, 395–96 (C.M.A.1988). *See* R.C.M. 1107(b). Therefore, this assignment of error is without merit.

### Conclusion

Accordingly, we affirm the findings and the sentence, as approved on review below.

Chief Judge DOMBROSKI and Judge SEFTON concur.