# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CAMPANELLA, and CELTNIEKS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist TIMOTHY T. ROBINSON**
**United States Army, Appellant**

ARMY 20120993

Headquarters, Joint Readiness Training Center and Fort Polk
Jeffrey R. Nance, Military Judge
Lieutenant Colonel James A. Barkei, Acting Staff Judge Advocate (advice)
Colonel Samuel A. Schubert, Staff Judge Advocate (recommendation)

For Appellant: Captain Patrick A. Crocker, JA (argued); Colonel Kevin Boyle, JA; Lieutenant Colonel Peter Kageleiry, Jr., JA; Major Vincent T. Shuler, JA; Captain Patrick A. Crocker, JA (on brief).

For Appellee: Captain Jaclyn Shea, JA (argued); Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Captain Daniel M. Goldberg, JA; Captain Rachel T. Brant, JA (on brief).

23 December 2014

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

TOZZI, Senior Judge:

A panel of officers and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of aggravated sexual assault and two specifications of adultery, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 934 (2006 & Supp. IV 2011), respectively. The panel sentenced appellant to a bad-conduct discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority deferred automatic and adjudged forfeitures of pay and allowances until action and approved the adjudged sentence.

ROBINSON—ARMY 20120993

This case is before us for review pursuant to Article 66, UCMJ. Of appellant's four assignments of error, two warrant discussion. None warrant relief. Appellant's personal submissions made pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) do not warrant relief.

## BACKGROUND

While deployed at FOB Shank, Afghanistan, appellant sexually assaulted Specialist (SPC) EB in an eight-person tent. Specialist EB was in a sleeping bag on her bed and had just taken two sleeping aids, Remeron and Nyquil, which she regularly used. Appellant sat on SPC EB's bed while using her internet connection to check emails. He slid his hand up SPC EB's inner thigh and she slapped his hand away. Appellant then put his knees over SPC EB's arms and straddled her. He kissed her on her neck and attempted to perform oral sex on her, but SPC EB pushed his head away each time.

Appellant removed SPC EB's clothes and tried to place his penis in her vagina, but SPC EB managed to get out of the bed. Specialist EB eventually returned to her sleeping bag, when appellant mounted her again. Specialist EB told appellant to leave. Appellant asked her why he should leave and then placed his penis in her vagina. At the time of the sexual act, SPC EB was menstruating and had a tampon in her vagina. She testified that she would not willingly have sexual intercourse while using a tampon because she believed such an act would be unsanitary. In a sworn statement to CID appellant stated EB "pushed me up before full insertion and said we couldn't do that."

Specialist MB, a colleague of SPC EB, walked into the tent during the sexual assault. He shined a flashlight on the bed and saw appellant on top of SPC EB as appellant held her in a "combative," controlling manner where she was not able to get free. Appellant then slid off the bed and hid near the far corner of the tent walls. Specialist EB told SPC MB that no one would believe this and that she did not think he would believe her. On cross-examination, SPC MB admitted that SPC EB told him that she was being held in a "combative" manner. Specialist MB initially thought that SPC EB and appellant were "intimate" when he entered the tent. Appellant testified at trial to having consensual sexual intercourse with EB on 21 March 2011.

## LAW AND DISCUSSION

### *Voir Dire of Chief Warrant Officer 4 DD*

Chief Warrant Officer 4 (CW4) DD sat on appellant's court-martial panel. During group voir dire, the prospective panel members were asked whether, after having seen the accused and read the charges, they believed they could not give

appellant a fair trial. Chief Warrant Officer 4 DD answered in the negative. The prospective panel members were also asked if anyone in their family or anyone close to them had ever been the victim of an offense similar to those charged in this case. Chief Warrant Officer 4 DD again answered in the negative. The prospective panel members were also asked if they were aware of anything that might raise a substantial question concerning whether they should participate as a court-martial member, to which CW4 DD answered in the negative. Chief Warrant Officer 4 DD also answered questions about how he would expect a sexual assault victim to act after an alleged attack and agreed that every person is different and every reaction is different. Chief Warrant Officer 4 DD said that he would not have a problem finding the accused guilty if the only witness was the victim. Neither party challenged CW4 DD for cause.

In a subsequent sexual assault case where he served as a member, CW4 DD revealed that his daughter had been sexually assaulted when she was a young child. Upon learning of this answer, appellant requested a post-trial hearing to determine whether his right to trial by a panel of fair and impartial members was violated and moved for a mistrial. In that post-trial hearing, CW4 DD revealed his daughter was the victim of sexual assault by a female babysitter when she was very young. He could not remember how old she was or when it happened. He did remember that the baby sitter had caused his daughter and another young male child she was also tending to perform sexual acts on each other. He testified that the babysitter received "a slap on the wrist" and that he had hoped that she would at least spend time in a juvenile detention center or face some penalty. Chief Warrant Officer 4 DD stated his daughter was now an adult and had no lasting effects from the incident. He did say that he and his wife "almost divorced" over the matter.[1] He did not reveal this information when asked questions during voir dire in appellant's case because at that time he thought the questions were tied to the charges in appellant's case and he did not believe they were similar to what happened to his daughter.

In his written ruling after the post-trial hearing, the military judge specifically found that CW4 DD testified convincingly on this matter that the incident involving his young daughter did not cross his mind when he was asked those questions because he knew he owed it to both parties to be fair and was sure that he could be. However, as the dissent correctly notes, CW4 DD testified that he considered the offense against his daughter during voir dire, but perceived that offense was not similar to the charged offenses. However, CW4 DD did specifically testify that the offenses against his daughter did not cross his mind during trial. Only later, after the trial, did CW4 DD think of the incident involving his daughter and decide that he should answer the question a little more broadly. The military judge, after reviewing the law of actual and implied bias and the liberal grant mandate, denied

---

[1] However, CW4 DD stated that "in the end it made us stronger."

appellant's motion for mistrial regarding CW4 DD. The military judge did not expressly state on the record his grounds for denying appellant's motion for mistrial regarding CW4 DD.

We apply the Supreme Court's test in *McDonough Power Equip. v. Greenwood*, 464 U.S. 548, 556 (1984), when analyzing claims that a panel member failed to disclose information during voir dire: "[A] party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *See United States v. Albaaj*, 65 M.J. 167, 169-170 (C.A.A.F. 2006). Here, we do not find that CW4 DD answered dishonestly. Appellant was charged with adultery and various other sex offenses against an adult soldier while deployed. Chief Warrant Officer 4 DD's daughter was the victim of a child sex offense. He testified he perceived the offenses were not similar. We acknowledge that reasonable people may interpret the term "similar" in broad or narrow ways. However, he testified that the incident involving his daughter did not cross his mind while sitting on the panel.[2] Although he answered the question narrowly, he did not do so dishonestly.[3]

Further, in considering the second prong of the *McDonough* test, we are convinced the military judge did not err by denying appellant's motion for mistrial as relates to CW4 DD's voir dire answers. "As a matter of due process, an accused has a constitutional right, as well as a regulatory right, to a fair and impartial panel." *United States v. Downing*, 56 M.J. 419, 421 (C.A.A.F. 2002) (quoting *United States v. Wiesen*, 56 MJ 172, 174 (2001)). Rule for Courts-Martial 912(f)(1)(N) requires a panel member be excused when it is "in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." "This rule encompasses the excusal of panel members for both actual and implied bias." *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010) (quoting *United States v. Elfayoumi*, 66 M.J. 354, 356 (C.A.A.F. 2008)) (additional citation omitted).

---

[2] We certainly do not condone "reticence" from panel members. *See United States v. Lake*, 36 M.J. 317, 323 (C.M.A. 1993). However, CW4 DD was not asked a question about sexual assault in general. Rather, he was asked about offenses similar to the charged offenses.

[3] Appellant argues that childhood sexual assault was "material" to the case because the government put on evidence of SPC EB's experiences as a child victim of sexual assault. Even assuming that childhood sexual assault is material to the case does not answer the altogether different question as to whether CW4 DD answered the voir dire questions honestly.

"The test for actual bias is whether any bias 'is such that it will not yield to the evidence presented and the judge's instructions.'" *United States v. Terry*, 64 M.J. 295, 302 (C.A.A.F. 2007) (quoting *United States v. Napoleon*, 46 M.J. 279, 283 (C.A.A.F. 1997)) (other citation omitted). Challenges for actual bias are evaluated based on the totality of the circumstances. *United States v. Richardson*, 61 M.J. 113, 118 (C.A.A.F. 2005) (citing *United States v. Strand*, 59 M.J. 455, 459 (C.A.A.F. 2004)).

Similarly, challenges for implied bias are also evaluated based on the totality of the circumstances. *Strand*, 59 M.J. at 459. Implied bias exists when, despite the panel member's disclaimer of actual bias, most people in the same position would nevertheless be biased. *United States v. Napolitano*, 53 M.J. 162, 167 (C.A.A.F. 2000). However, when there is no actual bias, "implied bias should be invoked rarely." *United States v. Leonard*, 63 M.J. 398, 402 (C.A.A.F. 2006) (quoting *United States v. Rome*, 47 M.J. 467, 469 (C.A.A.F. 1998)); *see also United States v. Clay,* 64 M.J. 274, 277 (C.A.A.F. 2007) (The above "statement reflects that where actual bias is found, a finding of implied bias would not be unusual, but where there is no finding of actual bias, implied bias must be independently established."). The test for determining implied bias is objective, "viewed through the eyes of the public, focusing on the appearance of fairness." *Clay,* 64 M.J. at 276 (quoting *Rome*, 47 M.J. at 469). "The hypothetical 'public' is assumed to be familiar with the military justice system." *Bagstad*, 68 M.J. at 462 (citing *Downing*, 56 M.J. at 423). "We focus 'on the perception or appearance of fairness of the military justice system.'" *United States v. Schlamer*, 52 M.J. 80, 93 (C.A.A.F. 1999) (quoting *United States v. Dale*, 42 M.J. 384, 386 (C.A.A.F. 1995)).

We are convinced CW4 DD was not actually biased. The military judge found that CW4 DD testified convincingly that he owed it to the parties to be fair and was sure that he could be fair. "A challenge for cause based on actual bias is essentially one of credibility." *United States v. Daulton*, 45 M.J. 212, 217 (C.A.A.F. 1998)) (citations and quotation marks omitted). We adopt the military judge's factual finding on that point.

Turning to implied bias, we are convinced that the military judge did not err in this determination as well. We initially note that the military judge did not state on the record his application of the law to the facts. However, he did clearly and accurately state the applicable law, including the liberal grant mandate. When the military judge addresses implied bias on the record, he receives greater deference, although one who does not still receives some deference. *See United States v. Hollings*, 65 M.J. 116, 119 (C.A.A.F. 2007) ("A military judge who addresses the concept on the record is entitled to greater deference than one who does not . . . . However, this does not suggest that the military judge is entitled to no deference.) (citation omitted). "We do not expect record dissertations but, rather, a clear signal that the military judge applied the right law." *Downing*, 56 M.J. at 422. We are

convinced the military judge applied the correct law, even though he did not address his application of it on the record.

Just as CW4 DD's honesty was central to resolving the first prong of the *McDonough* test, it is also important in resolving our inquiry into implied bias.  *See McDonough Power Equip*, 464 U.S. at 672 (Blackmun, J., with whom Stevens, J. and O'Connor, J. join, concurring) ("I also agree that, in most cases, the honesty or dishonesty of a juror's response is the best initial indicator of whether the juror in fact was impartial.").  The dissent presumes that CW4 DD gave an incorrect answer. However, reasonable minds can disagree as to the correctness of CW4 DD's answer. Given this reasonable disagreement, CW4 DD's honesty in answering the question is an important consideration in whether he is implicitly biased.

"[A] member is not *per se* disqualified because he or she or a close relative has been a victim of a similar crime."  *Daulton*, 45 M.J. at 217 (citations omitted). Here, in light of appellant's honesty, the passage of time, the lack of lasting effects on CW4 DD's now-adult child, the fact that appellant's marriage ultimately became stronger after the incident, and the differences between adult sexual assault between deployed soldiers compared to child sexual assault, we are convinced that the public's perception of the appearance of fairness would not be injured by CW4 DD sitting in judgment of appellant.  As such, appellant cannot prevail under the second prong of *McDonough* either.

### *The Government's Nondisclosure of Alleged Material Evidence*

Appellant also argued that the government did not disclose material evidence, where the trial counsel, Major (MAJ) DH, provided direct examination questions to SPC MB and direct examination questions with prompts to SPC EB.  None of those materials were provided to defense prior to trial, despite a defense request that the government provide "any writing or document used by a witness to prepare for trial."  The government had responded "[a]t this time, there is no such writing that has been used."

The military judge determined this nondisclosure was harmless beyond a reasonable doubt.  Specialist EB never looked at the questions MAJ DH gave her. She lost them soon after he gave them to her.  The military judge specifically found the questions "did not assist her in preparing her testimony in any way."  The military judge also found that failure to disclose the questions given to SPC MB was harmless beyond a reasonable doubt.  In particular, he noted that SPC MB's testimony helped the defense as much as it helped the government and his credibility was not a contested question.

We agree with the military judge that the nondisclosure was harmless beyond a reasonable doubt. *See United States v. Roberts*, 59 M.J. 323, 327 (C.A.A.F. 2004)

(applying the constitutional test for harmlessness in the context of nondisclosure of items specifically requested by an accused). While appellant was able to attack SPC EB's credibility in many ways, we fail to see how he could have attacked her credibility about a document SPC EB never looked at and lost soon after receiving it – when that document purportedly was intended to prepare her to testify.

Although a closer question, the nondisclosure regarding the documents provided to SPC MB is also harmless beyond a reasonable doubt. Appellant's cross-examination of SPC MB elicited facts supporting his defense of consent and mistake of fact. Put another way, appellant's strategy for cross-examining SPC MB was not to attack his credibility, but to elicit helpful facts from him.[4]

## CONCLUSION

On consideration of the entire record, the matters submitted pursuant to *Grostefon*, and the assigned errors, the findings and sentence as approved by the convening authority are AFFIRMED.

CAMPANELLA, Judge concurs.

CELTNIEKS, Judge, concurring in part and dissenting in part:

I agree with the majority that the trial counsel's nondisclosure of documents relating to witness preparation was harmless beyond a reasonable doubt. I disagree, however, with the majority's decision regarding Chief Warrant Officer 4 (CW4) DD's answers during voir dire. By failing to disclose his daughter had been sexually assaulted, the parties were unable to explore whether CW4 DD could serve as a fair and impartial panel member. A correct response would have provided a valid basis for a challenge for cause. *See McDonough Power Equip. v. Greenwood*, 464 U.S.

---

[4] The military judge also entered findings regarding documents not provided to three other witnesses: the sexual assault nurse examiner (SANE) who examined SPC EB, the government's expert witness, and the unit's sexual assault response coordinator. He also found – as do we – that this nondisclosure was harmless beyond a reasonable doubt. First, the documents provided to the SANE were consistent with all other pretrial discovery provided to defense. Second, the document provided to the expert, in the words of the military judge, "cover the standard subject matter and testimony of countless behavioral experts that have testified in countless trials about counterintuitive reactions by sexual assault victims. The court has no doubt that the defense easily anticipated everything [the expert] had to say at trial." The expert's testimony partially addressed matters of which appellant was found not guilty. Third, the testimony of the unit sexual assault response coordinator was brief and inadvertently provided a prior inconsistent statement from SPC EB.

7

ROBINSON—ARMY 20120993

548, 556 (1984). Accordingly, I would set aside the findings and sentence and authorize a rehearing.

At the post-trial Article 39(a) session, the assistant defense counsel and CW4 DD had the following exchange:

> Q. Why did you not disclose or answer in the affirmative when the judge asked you whether you personally or someone close to you had been personally affected by sexual assault?[5]
>
> A. Well, because initially I thought - the way the question was asked - and a lot of times, you know, I want to be candid here, you lawyers ask some pretty funny questions and the judge asked some questions too, but you guys asked them. *And I thought it was somewhat necessarily tied to this case. Was it* [sic] *similar to what happened in this case and it wasn't. I perceived it wasn't. But then when I left and I knew I was coming back for the next court-martial, I said, I might want to say something about this because, just in case, I want to make sure, you know, I'm a fair guy.* The Army teaches us to think and be critical thinkers. I thought once that trial was over and I was called for the next one, I thought, well I'm going - because when I got the email prior to this, I said, "Well I'm going to answer yes." I didn't know the circumstances around it because it just said, "Here is the trial," nothing about the trial but here is the questionnaire. *It said, "Do any of you have any history?" So, I said, "Yes," there and answered what had happened on that.*
>
> . . . .
>
> Q. Prior to the judge and counsel asking you questions, the only knowledge that you had of this case was based off the charge sheet?
>
> A. When I came in here and I read the charge sheet, sir, yes that's it.

---

[5] This question is not entirely accurate because the voir dire question at issue did not refer to sexual assault generally, but to offenses similar to the charged offense.

8

Q. On the charge sheet do you recall what the charges were?

A. I know there was a few. I think there was a few in different areas but I can't - I want to say three in - and again - so three in the first part and three in the - I can't really recall all of them.

Q. Was your understanding of what happened to your daughter was sexual assault?

A. To me it was. It was considered – it was a form of sexual assault.

Q. And so, when the judge asked you, has anyone or any member of your family or anyone close to you personally ever been a victim of an offense similar to any of those charged in this case, your understanding was not sexual assault, big sexual assault, but specific to what the charges….

A. That they were similar and this was not similar that's why.

Q. Now, when you heard of - when you heard evidence during the trial about [SPC EB]'s childhood sexual assault, do you recall that?

A. I do, sir.

Q. When you heard evidence of that why didn't you make mention to the military judge that you perhaps might have some knowledge, personal knowledge or personal experience similar to the complaining witness in this particular case?

A. I thought that again it was under the same premise of, you know, this is the other - I guess the charges are not similar I understand that. And I don't even remember what [SPC EB] said. *I'm sure some of it may have been similar but I didn't think it warranted me to - and I didn't even know I could to be honest to interject at that time and say, "Hey...."* but it didn't cross my mind either because I was already on the panel and I owed it to both parties to

> be fair and impartial, you know, to be the professional
> officer I am and understand both sides of the story.
>
> Q. But you do remember that there were elements of child
> sexual assault in this particular case in which [SPC EB]
> testified to?
>
> A. I do, sir.

(Emphasis added).

The record indicates CW4 DD contemplated the similarities between his daughter's case and the charges during voir dire and later during the trial itself. Nevertheless, the military judge found:

> [CW4 DD] testified convincingly at the post-trial [Article
> 39(a) session] on this matter that the incident involving
> his daughter did not cross his mind when he was asked
> those questions because he knew he owed it to both parties
> to be fair and was shure [sic] that he could be. Only later,
> after the trial when asked a different question, did he think
> of the incident involving his daughter and decide that he
> maybe should answer the question a little more broadly.

An impartial trier of fact is essential to ensuring the right to a fair trial. The Supreme Court describes the function of voir dire as follows:

> Voir dire examination serves to protect that right by
> exposing possible biases, both known and unknown, on the
> part of potential jurors. Demonstrated bias in the
> responses to questions on voir dire may result in a juror
> being excused for cause; hints of bias not sufficient to
> warrant challenge for cause may assist parties in
> exercising their peremptory challenges. The necessity of
> truthful answers by prospective jurors if this process is to
> serve its purpose is obvious.

*McDonough*, 464 U.S. at 554. "Where a potential member is not forthcoming . . . the process may well be burdened intolerably." *United States v. Mack*, 41 M.J. 51, 54 (C.M.A. 1994). We expect complete candor from court members during voir dire. *United States v. Albaaj*, 65 M.J. 167, 169 (C.A.A.F. 2007) (citing *United States v. Modesto*, 43 M.J. 315, 318 (C.A.A.F. 1995)). "Anything less undermines the purpose of the member selection process at trial and, in turn, potentially deprives an accused of an impartial determination of guilt and a fair trial." *Id*. (citing *Mack*, 41

M.J. at 54 ("this Court consistently has required member honesty during voir dire"); *United States v. Lake*, 36 M.J. 317, 323 (C.M.A. 1993) (the court will not "condone such reticence by . . . members"); *United States v. Rosser*, 6 M.J. 267, 273 (C.M.A. 1979) ("No premium will be paid in the military justice system for lack of candor on the part of its members"), *abrogated on other grounds by United States v. Biagase*, 50 M.J. 143, 151 (C.A.A.F. 1999)).

"A panel member is not the judge of his own qualifications . . . . The duty to disclose cannot be dependent upon the court member's own evaluation of either the importance of the information or his ability to sit in judgment." *Albaaj*, 65 M.J. at 170 (citations omitted). Further, the court member's duty to disclose "is an obligation that continues through the duration of the trial. It makes no difference whether the member knew during voir dire that his response to a question was incorrect or whether he later realized, or reasonably should have realized, that his initial response was incorrect." *Id.*

Here, CW4 DD's negative responses at voir dire and failure to divulge the information during trial constituted nondisclosure of a material fact under the first prong of the *McDonough* test. In a sexual assault case, the fact that a panel member's child was the victim of a sexual assault is material information that necessarily correlates with the appellant's right to be judged by an impartial fact finder. This nondisclosure deprived the parties and the military judge of the opportunity to inquire about potential biases harbored by CW4 DD.

Regarding the second prong to the *McDonough* test, knowledge that CW4 DD's daughter was the victim of a sexual assault would have established a basis for a valid challenge for cause under Rule for Courts-Martial 912(f)(1)(N) under an implied bias theory. "[T]he test for implied bias is objective, and asks whether, in the eyes of the public, the challenged member's circumstances do injury to the 'perception of appearance of fairness in the military justice system.'" *United States v. Terry*, 64 M.J. 295, 302 (C.A.A.F. 2007) (quoting *United States v. Moreno*, 63 M.J. 129, 134 (C.A.A.F.2006)). "In making this objective evaluation, we ask whether most members in the same position . . . would be prejudiced or biased." *Albaaj*, 65 M.J. at 171 (citing *Terry*, 64 M.J. at 302).

The evidence from the post-trial Article 39(a) hearing also revealed that CW4 DD believed the person who sexually assaulted his daughter received "a slap on the wrist." He explained, "I was hoping she would at least go to . . . juvenile detention or something like that. . . . I thought more should have happened to her. She really just went home with nothing - no penalty or anything, so that's what I mean." Additionally, CW4 DD testified that the incident "nearly caused a divorce between me and my wife," and that his daughter "bounced back" after she went to counseling for a couple of years following the sexual assault. Had CW4 DD properly divulged the information during voir dire or at trial, counsel could have made further inquiry

11

that would have likely prompted a request to remove CW4 DD from the panel either for cause or via a peremptory challenge, as needed.

The nondisclosure by CW4 DD, combined with his remarks regarding punishment and how his daughter's case affected his family, raise significant concerns about the fairness and impartiality of the proceeding, especially considering the government introduced evidence of child sexual abuse suffered by SPC EB to bolster its case-in-chief.

When CW4 DD decided to answer the boilerplate voir dire questions in the negative, he clearly did not appreciate the effect this would have on the proceeding. It does not appear CW4 DD tried to deceive the court regarding the incident. Regardless, to focus on characterizing his testimony as "honest" misses the point. The appellant has a constitutional right to a fair trial by an impartial panel. Voir dire is the primary mechanism that safeguards this right. When CW4 DD did not provide correct answers to material voir dire questions -- for whatever reason -- the parties did not have information necessary to apply this crucial vetting process.

By distinguishing his daughter's case from the charges against the appellant, CW4 DD acted as the judge of his own qualifications and concealed material information from the court. Consequently, a panel member whose child was the victim of sexual assault sat in judgment at the appellant's trial for sexual assault, unbeknownst by the parties. Being "a fair guy," and with the experience of appellant's trial under his belt, CW4 DD correctly answered a similar question before sitting as a member at a subsequent sexual assault trial. But this revelation was too late for the appellant, who had been tried and found guilty without the benefit of a fair member selection process due to CW4 DD's inadvertent lack of candor throughout the proceeding.

Finally, while the military judge identified the law pertaining to nondisclosure by a member at voir dire, tests for actual and implied bias, and the liberal grant mandate, he did not include any analysis to support his ruling on this issue. We are left to speculate how the military judge applied the law to facts revealed by CW4 DD at the post-trial Article 39(a) session seven months after the trial. It is difficult to defer to the military judge when no rationale for his ruling on this issue is available for review. In essence, notwithstanding *Albaaj*, the ruling depends on CW4 DD's own evaluation of both the information regarding his daughter's sexual assault *and* his ability sit in judgment on appellant's panel. If the information had been revealed during voir dire, I am convinced CW4 DD would have been excused from the panel after a challenge for cause.

Under the totality of the circumstances, a reasonable public observer would conclude that CW4 DD's participation as a panel member after failing to disclose his daughter's sexual assault during appellant's trial injured the perception of fairness in

the military justice system. The findings and sentence should be set aside and a rehearing should be authorized to ensure the appellant receives a fair trial by an impartial trier of fact.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court